220 P.3d 191 (2009)
Jesse MAGAÑA, Petitioner,
v.
HYUNDAI MOTOR AMERICA; Hyundai Motor Company, Respondents, and
Ricky and Angela Smith, husband and wife, Dennis Nylander and Jane Doe Nylander, husband and wife, Defendants.
No. 80922-4.
Supreme Court of Washington, En Banc.
Argued January 22, 2009.
Decided November 25, 2009.
*193 Charles Kenneth Wiggins, Kenneth Wendell Masters, Wiggins & Masters, PLLC, Bainbridge Island, WA, Paul W. Whelan, Ray W. Kahler, Stritmatter Kessler Whelan Coluccio, Peter O'Neil, Attorney at Law, Michael E. Withey, Law Offices of Michael Withey, Alisa R. Brodkowitz, Brodkowitz Law, Seattle, WA, Derek Jay Vanderwood, Attorney at Law, Vancouver, WA, for Petitioner.
Douglas Fredrick Foley, Foley & Buxman, PLLC, Vancouver, WA, for Defendants.
*194 Heather K. Cavanaugh, Miller Nash, LLP, Portland, OR, Michael Barr King, Gregory Mann Miller, James Elliot Lobsenz, Carney Badley Spellman, PS, Seattle, WA, for Respondents.
Hugh Davidson Spitzer, Emanuel Jacobowitz, Foster, Pepper, PLLC, Seattle, WA, for Amicus Curiae Association of Washington Business.
Aaron V. Rocke, Rocke Law Group, PLLC, Seattle, WA, Stewart Andrew Estes, Keating Bucklin & McCormack, Seattle, WA, for Amicus Curiae Washington Defense Trial Lawyers.
SANDERS, J.
¶ 1 Trial courts need not tolerate deliberate and willful discovery abuse. Given the unique facts and circumstances of this case, we hold that the trial court appropriately diagnosed Hyundai's willful efforts to frustrate and undermine truthful pretrial discovery efforts by striking its pleadings and rendering an $8,000,000 default judgment plus reasonable attorney fees. This result appropriately compensates the other party, punishes Hyundai, and hopefully educates and deters others so inclined.
¶ 2 We determine the trial court acted well within its discretion and reverse the Court of Appeals, which improvidently reversed the trial court.

FACTS AND PROCEDURAL HISTORY
¶ 3 On February 15, 1997 Jesse Magaña was a passenger in a 1996 Hyundai Accent, two-door hatchback driven by Ricky Smith (Smith). Angela Smith was also a passenger. As they drove over a hill they saw an oncoming truck driven by Dennis Nylander that appeared to be in their lane. Smith swerved the Accent to avoid the truck, causing his car to veer off the road. The car hit several trees and spun violently. Magaña was thrown out of the rear window and landed about 50 to 100 feet away from where the car eventually stopped. He was rendered a paraplegic due to the accident. Smith suffered a concussion, and Angela broke her collarbone, leg, and shoulder blade.
¶ 4 Magaña filed suit on February 8, 2000 in Clark County Superior Court against Hyundai Motor America and Hyundai Motor Company (collectively Hyundai), the Smiths, and the Nylanders. Magaña alleged his injuries were proximately caused by a design defect in the car which allowed the seat to collapse and by the negligent driving of Smith and Nylander. On January 11, 2002 the trial court granted the Nylanders summary judgment of dismissal, and they were dismissed from the lawsuit.
¶ 5 During discovery in 2000-2001 Magaña requested many documents from Hyundai. Hyundai refused to directly answer Magaña's requests but reworded and limited their scope. Hyundai never sought a protective order to narrow the scope of discovery, and Magaña never sought a motion to compel Hyundai to answer these discovery requests before the first trial.
¶ 6 In request for production 20 Magaña requested Hyundai produce "copies of any and all documents including but not limited to complaints, answers, police reports, photographs, depositions or other documents relating to complaints, notices, claims, lawsuits or incidents of alleged seat back failure on Hyundai products for the years 1980 to present." Clerk's Papers (CP) at 3728. Hyundai responded in April 2000 that the request was "overly broad and not reasonably calculated to lead to the discovery of admissible evidence" and that there were "no personal injury or fatality lawsuits or claims in connection with or involving the seat or seat back of the Hyundai Accent model years 1995-1999." CP at 2379.
¶ 7 In interrogatory 12 Magaña also requested Hyundai to "[i]dentify with name and model number all Hyundai vehicles that used the same (or substantially similar) front right seat as the 1996 Hyundai Accent." CP at 3722. Hyundai responded that the 1995-1999 "Hyundai Accents used the same or substantially similar right front seat as the 1996 Hyundai Accent" and that "[n]o other Hyundai model automobile uses the same or substantially similar design for the right front seat...." CP at 2376.
¶ 8 A jury trial commenced on June 3, 2002. At trial one of Magaña's expert witnesses, *195 Dr. Joseph Burton, testified that an alternative seat belt design, known as an integrated seat belt design, would have prevented Magaña's injuries. Hyundai objected because there was no discussion about an integrated seat belt design in Dr. Burton's deposition during discovery, but the trial court overruled the objection. Four days later the trial court decided it should have sustained Hyundai's objection to Burton's testimony and struck his testimony. However it did not advise the jury that the testimony had been stricken because of concerns it would highlight the evidence.
¶ 9 Magaña prevailed at the jury trial by a vote of 10-2 and was awarded over $8,000,000 in damages. The jury attributed 60 percent of the fault to Hyundai and 40 percent to Smith. Smith and Hyundai appealed. The Court of Appeals reversed and remanded in 2004 as to Hyundai,[1] determining the trial court's failure to instruct the jury that the expert's testimony had been stricken misled the jury as to which evidence was properly before it, and the error was not harmless. Magaña v. Hyundai Motor Am., 123 Wash.App. 306, 316, 319, 94 P.3d 987 (2004). The retrial was to be limited to the issue of liability without disturbing the jury's damages verdict. The mandate was issued on April 4, 2005. Magaña did not seek review in this court.
¶ 10 On May 23, 2005 the trial court set the retrial date for January 17, 2006. On September 13, 2005 Magaña's counsel requested that Hyundai update its responses to Magaña's previous discovery requests in 2000. Magaña believed Hyundai's initial response to interrogatory 12 (his request to discover other Hyundai vehicles with the same or similar seats to the 1996 Accent) was inaccurate because he had found a recliner mechanism in another Hyundai model that looked identical to the one in the 1996 Accent. Magaña also requested Hyundai update its response to request for production 20 regarding other incidents of seat back failure in Hyundai vehicles without limiting the response to 1995-1996 Accents because it was clear other Hyundai vehicles had the same recliner mechanism. Hyundai told Magaña it would provide him with information relating to alleged seat back failure in the 1995-1999 Accents and the 1992-1995 Hyundai Elantras. Magaña continued to request all seat back failure claims in Hyundai products from 1980 to the present.
¶ 11 On October 25, 2005 Hyundai updated its response to Magaña's request for production 20 by objecting but stating it would produce complaints and claims of alleged seat back failure in 1995-1999 Hyundai Accents and in 1992-1995 Hyundai Elantras. Hyundai also supplemented its response to Magaña's interrogatory 12 stating that only the 1995-1999 Hyundai Accents used the same or similar right front seat as the 1996 Accent and that although not asked by Magaña, the 1992-1995 Hyundai Elantras had a recliner on the right front seat that was substantially similar to the front recliner on the 1996 Hyundai Accent.
¶ 12 Hyundai also produced documents of two claims relating to seat back failure from 2000 (Matthew Dowling claim) and 2002 (Janelle Bobbitt and Joshua Chastagner claim). Hyundai represented these two claims were the only seat back failure claims involving 1995-1999 Hyundai Accents or 1992-1995 Hyundai Elantras other than Magaña's claim.
¶ 13 On October 27, 2005 Magaña filed a motion to compel Hyundai to produce all documents relating to other seat back failures in Hyundai vehicles as he had previously requested in the requests for production served on Hyundai in 2000. Hyundai opposed the motion, arguing it was too burdensome and would not lead to the discovery of admissible evidence. However, Hyundai never requested a protective order to narrow the scope of discovery.
¶ 14 On November 18, 2005 the trial court ordered Hyundai to produce "Police Reports, legal claims, Consumer Complaints and Expert Reports or Depositions and Exhibits *196 and photographs thereto with respect to all consumer complaints and lawsuits involving allegations of seat back failure on all Hyundai vehicles with single recliner mechanisms regardless of incident date and regardless of model year." CP at 961-62. On November 21, 2005 Hyundai produced numerous documents that related to other complaints of seat back failure. On December 1, 2005 Hyundai produced additional documents including police reports, photographs, expert records, deposition transcripts, and for the first time, records from its consumer "hotline" database. Nine reports of seat back failure involving 1995-1999 Accents were included in these documents.
¶ 15 On December 23, 2005 Magaña moved for a default judgment against Hyundai, arguing that it would be impossible to prepare a proper case with the other similar incidents that had just been produced by Hyundai. Magaña also argued that evidence was lost due to the delay. Magaña argued a continuance would only reward Hyundai's behavior. Magaña claimed Hyundai (1) failed to comply with production requests, (2) falsely answered interrogatories, (3) willfully spoiled evidence of other similar incidents, and (4) failed to produce documents related to rear impact crash tests. Magaña's experts argued that the information of other similar incidents would have been invaluable and useful during the first trial.
¶ 16 On January 4, 2006 Magaña requested an evidentiary hearing on his motion for sanctions. He also filed a motion to amend his complaint to add a failure to warn claim. Hyundai produced the last of the documents on January 6, 2006, less than two weeks before the scheduled trial and argued it had been relieved of the obligation to produce other similar incidents of seat back failure per an agreement between the parties in July 2001. Hyundai also asserted that any prejudice against Magaña was speculative and that it had truthfully answered interrogatory 12. Hyundai did admit to failing to disclose documents from an earlier lawsuit, CP at 2361-66 (Acevedo v. Hyundai, Amended Complaint and Jury Demand, No. ATL-L-2276-01 (N.J.Sup.Ct.2002)), and a sled test.[2]
¶ 17 On January 13, 2006 the trial court granted Magaña's motion for an evidentiary hearing, stating it would primarily focus on whether Magaña was prejudiced in preparing for the retrial since the remand by the Court of Appeals. The court denied Hyundai's request for a continuance after Magaña withdrew his motion to amend his complaint.
¶ 18 The evidentiary hearing took place from January 17 to January 20, 2006, during which witnesses testified and the court considered many pleadings and declarations. After the hearing the trial court imposed a default judgment against Hyundai supported by numerous findings of fact. The court found the discovery violations alleged by Magaña were real and serious. The court found (1) there was no agreement between the parties to limit discovery, (2) Hyundai falsely responded to Magaña's request for production[3] and interrogatories,[4] (3) Magaña was substantially prejudiced in preparing for trial, and (4) evidence was spoiled and forever lost. The trial court considered lesser sanctions but found that the only suitable remedy under the circumstances was a default judgment. Hyundai then appealed.
¶ 19 The Court of Appeals reversed in a two-to-one decision and remanded for a new trial. Magaña v. Hyundai Motor Am., 141 Wash.App. 495, 170 P.3d 1165 (2007) (Magaña II). The Court of Appeals majority found that Hyundai had willfully violated Magaña's discovery request but there was "no prejudice to Magaña's ability to retry his case resulting from Hyundai's discovery violations" and lesser sanctions would have sufficed. Id. at 500, 511, 170 P.3d 1165. We *197 granted review. Magana v. Hyundai Motor Am., 164 Wash.2d 1020, 195 P.3d 89 (2008).

STANDARD OF REVIEW
¶ 20 We review a trial court's discovery sanctions for abuse of discretion. Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 338, 858 P.2d 1054 (1993).[5] "A trial court exercises broad discretion in imposing discovery sanctions under CR 26(g) or 37(b), and its determination will not be disturbed absent a clear abuse of discretion." Mayer v. Sto Indus., Inc., 156 Wash.2d 677, 684, 132 P.3d 115 (2006) (citing Fisons, 122 Wash.2d at 355-56, 858 P.2d 1054). "A trial court abuses its discretion when its order is manifestly unreasonable or based on untenable grounds." Fisons, 122 Wash.2d at 339, 858 P.2d 1054 (citing Holbrook v. Weyerhaeuser Co., 118 Wash.2d 306, 315, 822 P.2d 271 (1992)). "A discretionary decision rests on `untenable grounds' or is based on `untenable reasons' if the trial court relies on unsupported facts or applies the wrong legal standard; the court's decision is `manifestly unreasonable' if `the court, despite applying the correct legal standard' to the supported facts, adopts a view `that no reasonable person would take.'" Mayer, 156 Wash.2d at 684, 132 P.3d 115 (internal quotation marks omitted) (quoting State v. Rohrich, 149 Wash.2d 647, 654, 71 P.3d 638 (2003)).
¶ 21 "There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order." Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 642, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). However since the trial court is in the best position to decide an issue, deference should normally be given to the trial court's decision. Fisons, 122 Wash.2d at 339, 858 P.2d 1054. A trial court's reasons for imposing discovery sanctions should "be clearly stated on the record so that meaningful review can be had on appeal." Burnet v. Spokane Ambulance, 131 Wash.2d 484, 494, 933 P.2d 1036 (1997). If a trial court's findings of fact are clearly unsupported by the record, then an appellate court will find that the trial court abused its discretion. Mayer, 156 Wash.2d at 684, 132 P.3d 115. An appellate court can disturb a trial court's sanction only if it is clearly unsupported by the record. See Ermine v. City of Spokane, 143 Wash.2d 636, 650, 23 P.3d 492 (2001) (noting that a reasonable difference of opinion does not amount to abuse of discretion).

ANALYSIS
¶ 22 We are asked to determine whether the trial court abused its discretion to grant a default judgment against Hyundai as a discovery sanction. Under the authority of CR 37(d), the trial court entered a default judgment against Hyundai. CR 37 sets forth the rules regarding sanctions when a party fails to make discovery. CR 37(d) authorizes a court to impose the sanctions in CR 37(b)(2), which range from exclusion of evidence to granting default judgment when a party fails to respond to interrogatories and requests for production. See Smith v. Behr Process Corp., 113 Wash.App. 306, 324, 54 P.3d 665 (2002).
¶ 23 Broad discovery is permitted under CR 26. "It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears to be reasonably calculated to lead to the discovery of admissible evidence." CR 26(b)(1). If a party objects to an interrogatory or a request for production, then the party must seek a protective order under CR 26(c). CR 37(d). If the party does not seek a protective order, then the party must respond to the discovery request. The party cannot simply ignore or fail to respond to the request. "[A]n evasive or misleading answer is to be treated as a failure to answer." CR 37(d). Hyundai never sought a protective order under CR 26(c) but simply objected to Magaña's discovery requests, asserting the requests were overbroad and not reasonably *198 calculated to lead to the discovery of admissible evidence.
¶ 24 If a trial court imposes one of the more "harsher remedies" under CR 37(b), then the record must clearly show (1) one party willfully or deliberately violated the discovery rules and orders, (2) the opposing party was substantially prejudiced in its ability to prepare for trial, and (3) the trial court explicitly considered whether a lesser sanction would have sufficed. Burnet, 131 Wash.2d at 494, 933 P.2d 1036. "The purposes of sanctions orders are to deter, to punish, to compensate and to educate." Fisons, 122 Wash.2d at 356, 858 P.2d 1054.

Willfulness
¶ 25 "Fair and reasoned resistance to discovery is not sanctionable." Fisons, 122 Wash.2d at 346, 858 P.2d 1054. "A party's disregard of a court order without reasonable excuse or justification is deemed willful." Rivers v. Wash. State Conference of Mason Contractors, 145 Wash.2d 674, 686-87, 41 P.3d 1175 (2002) (citing Woodhead v. Disc. Waterbeds, Inc., 78 Wash.App. 125, 130, 896 P.2d 66 (1995)).
¶ 26 The trial court found Hyundai willfully violated the discovery rules. The Court of Appeals held "it was reasonable for the trial court to conclude that Hyundai's failure to timely disclose similar incidents of seat back failure was willful." Magaña II, 141 Wash. App. at 511, 170 P.3d 1165. The trial court did not abuse its discretion in finding Hyundai willfully violated the discovery rules.
¶ 27 The trial court held, and the Court of Appeals agreed, Hyundai's responses to Magaña's request for production 20 and interrogatory 12 were false, misleading, and evasive. Id. The record supports this finding. Hyundai failed to inform Magaña in its response to request for production 20 that there were in fact several claims of alleged seat back failure of which Hyundai was aware, including the Martinez, McQuary, and Salizar claims. Id. at 527-28, 170 P.3d 1165. In fact, Hyundai falsely represented to Magaña that there were no claims involving the seat back of 1995-1999 Hyundai Accents. Then Hyundai failed to supplement its incorrect responses, as required under CR 26(e)(2), when it learned about other claims involving seat back failure, including the Wagner, Bobbitt, Pockrus, and Powell claims, before the June 2002 trial. Id. Additionally, Hyundai's responses to interrogatory 12 were inaccurate because it misrepresented there were no identical recliner mechanisms in other Hyundai vehicles as in the 1996 Accent.
¶ 28 A corporation must search all of its departments, not just its legal department, when a party requests information about other claims during discovery. Here Hyundai searched only its legal department. Hyundai's counsel[6] told the trial court that in response to request for production 20, Hyundai's search "was limited to the records of the Hyundai legal department" and that "no effort was made to search beyond the legal department, as this would have taken an extensive computer search." CP at 5319. As the trial court correctly found, "[t]here is no legal basis for limiting a search for documents in response to a discovery request to those documents available in the corporate legal department. This would be the equivalent of limiting the responses in Smith [, 113 Wash.App. 306, 54 P.3d 665,] to a search for chemical tests which were on record in the corporate legal office, without disclosing that the search was so limited." CP at 5319-20. The trial court went on to say, "the legal department at Hyundai worked closely with the Consumer Affairs Department with respect to customer complaints and claims, including product liability claims. The vehicle *199 owners' manual directed customers to call the Consumer Affairs number." CP at 5320. Hyundai had the obligation to diligently respond to Magaña's discovery requests about other similar incidents. It failed to do so by using its legal department as a shield. The trial court also found "Hyundai had the obligation not only to diligently and in good faith respond to discovery efforts, but to maintain a document retrieval system that would enable the corporation to respond to plaintiff's requests. Hyundai is a sophisticated multinational corporation, experienced in litigation." Id. Hyundai willfully and deliberately failed to comply with Magaña's discovery requests since Magaña's initial requests in 2000 and continued to do so.
¶ 29 The record fully supports the trial court's other conclusions: there was no agreement between the parties to limit discovery,[7] Hyundai's definition of "claims" was too narrow because Magaña's discovery request was broad, and the seats in the Hyundai Elantra were similar to the seats in the Hyundai Accent.[8] These findings of fact also support the conclusion Hyundai willfully violated the discovery rules.
¶ 30 The trial court's finding that Hyundai willfully violated the discovery rules was based on reasonable grounds and substantial evidence in the record. The trial court did not abuse its discretion as to the willfulness element of the three-part test.

Prejudice
¶ 31 The trial court found Magaña suffered substantial prejudice in preparing for his second trial. However the Court of Appeals asserted that finding was unfounded and that "the trial court abused its discretion in sanctioning Hyundai with a default judgment." Magaña II, 141 Wash.App. at 515, 170 P.3d 1165. The Court of Appeals stated "that on the record presented, there is insufficient evidence to show that the delay occasioned by Hyundai's late production substantially prejudiced Magaña." Id. at 516, 170 P.3d 1165.
¶ 32 The Court of Appeals argued Magaña could complete his inquiry into other similar accidents if he had more time to do so. Id. But as Magaña testified during the evidentiary hearing, his inquiry into other similar incidents was futile and time would not have cured that. After finally receiving the discovery responses from Hyundai and shortly before the evidentiary hearing, Magaña attempted to contact 18 complainants. Of those 18 complainants, only one produced relevant files for Magaña. Twelve of the complainants were unreachable, did not remember enough to be helpful, or had purged their records. Five of them had not responded to Magaña's calls and messages at the time of the evidentiary hearing. More time would not have benefited Magaña because most of the evidence had gone stale. After an extensive evidentiary hearing, the trial court found, "it is very difficult if not impossible to adequately investigate and develop the OSI [other similar incidents] information at this late date.... Even if this time were now available, evidence has been lost and much of the information is stale." CP at 5331.
¶ 33 The Court of Appeals also criticized Magaña's "choice of strategy in pursuing the case," asserting that Magaña requested additional discovery and then complained that "the time required to investigate would have substantially prejudiced his case." Magaña II, 141 Wash.App. at 518-19, 170 P.3d 1165. This assertion completely misses the mark. Magaña was entitled to the discovery he requested. Hyundai never requested a protective order, and the discovery requests were reasonably calculated to lead to the production of admissible evidence. The discovery requested should have been given to Magaña in a timely manner. Magaña need *200 not have continually requested more discovery and updates on existing requests. Additionally Magaña should not have needed to file a motion for an order to compel Hyundai to produce the documents Hyundai was required to produce by the discovery requests themselves, nor does this opinion rest on the existence of a discovery order. But the Court of Appeals faults Magaña for continually requesting discovery materials that should have been submitted in the first place, and as Judge Bridgewater accurately asserts in his dissent, "the fault should lie with Hyundai, not Magaña." Id. at 528, 170 P.3d 1165 (Bridgewater, J., dissenting).
¶ 34 The trial court held, "[r]easonable opportunity to conduct discovery is a fundamental part of due process of law. If disclosed in the 2000 to 2001 time frame the information regarding other seat back failures in Hyundai vehicles would have been investigated and further evidence would have been developed by the plaintiff ... Plaintiff would have had the opportunity to contact witnesses and to preserve evidence and would have done so." CP at 5329. Instead evidence was lost and much of what remained was too stale for effective use. The Court of Appeals argues "many of the incidents were already several years old when Magaña first requested them." Magaña II, 141 Wash.App. at 518, 170 P.3d 1165. But that is not the point. Hyundai knew about these claims but willfully failed to disclose them thereby prejudicing Magaña's ability to prepare for trial.
¶ 35 In Behr the trial court found the plaintiffs were substantially prejudiced in preparing for trial because "`the discovery violations complained of suppressed evidence that was relevant, because it goes to the heart of the plaintiffs' claims, and it supports them.'" 113 Wash.App. at 325, 54 P.3d 665 (quoting court proceedings). As Judge Bridgewater articulated, "[o]n remand, the sole issue was whether Hyundai was liable for the allegedly defective occupant restraint system." Magaña II, 141 Wash.App. at 531, 170 P.3d 1165 (Bridgewater, J., dissenting). Hyundai suppressed relevant evidence which included many documents about other similar claims against Hyundai that would have supported Magaña's claims.
¶ 36 The Court of Appeals also uses the wrong standard when it asserts Magaña was not prejudiced in obtaining a fair trial. Magaña II, 141 Wash.App. at 516-18, 170 P.3d 1165. This prong of the test looks to whether Magaña was prejudiced in preparing for trial, not obtaining a fair trial. Burnet, 131 Wash.2d at 494, 933 P.2d 1036; Behr, 113 Wash.App. at 325-26, 54 P.3d 665. The Court of Appeals asserts, "[t]his does not demonstrate prejudice to his ability to obtain a fair trial when (1) he did not request additional discovery until shortly before trial, (2) the parties litigated the scope of permissible discovery, and (3) Hyundai timely produced documentation of other similar incidents in compliance with the court's order." Magaña II, 141 Wash.App. at 516-17, 170 P.3d 1165 (emphasis added). Each of these assertions by the Court of Appeals was contradicted by the trial court's findings of fact and conclusions of law, which were supported by substantial evidence. On the facts of this case, Magaña could not have obtained a fair trial, let alone properly prepare for a trial.
¶ 37 The Court of Appeals concluded, "[i]f [Magaña] tries to find experts and they are unable to analyze the evidence and would have been able to analyze it if it had been provided earlier, then and only then could irrevocable prejudice be shown that may warrant the trial court's usurping of the right to trial and directing a verdict in Magaña's favor." Id. at 520, 170 P.3d 1165. But the problem is Magaña is unable to find the evidence because others who had accidents involving Hyundai vehicles are no longer living, have disappeared, or have discarded their evidence. The evidence that could be analyzed by experts has been lost because of the time that has elapsed between when Hyundai should have disclosed the information and the time it was compelled to do so more than five years late.
¶ 38 Magaña's ability to prepare for trial was substantially prejudiced because of Hyundai's egregious actions during discovery. The Court of Appeals substituted its own discretion for the trial court's, which is inconsistent with the abuse of discretion *201 standard. The record supports the findings of the trial court that Magaña was prejudiced in preparing for trial.

Lesser Sanctions
¶ 39 A court should issue sanctions appropriate to advancing the purposes of discovery. Burnet, 131 Wash.2d at 497, 933 P.2d 1036. The discovery sanction should be proportional to the discovery violation and the circumstances of the case. Id. at 496-97, 933 P.2d 1036. "[T]he least severe sanction that will be adequate to serve the purpose of the particular sanction should be imposed. The sanction must not be so minimal, however, that it undermines the purpose of discovery. The sanction should insure that the wrongdoer does not profit from the wrong." Fisons, 122 Wash.2d at 355-56, 858 P.2d 1054 (footnote omitted). "Before resorting to the sanction of dismissal, the trial court must clearly indicate on the record that it has considered less harsh sanctions under CR 37. Its failure to do so constitutes an abuse of discretion." Rivers, 145 Wash.2d at 696, 41 P.3d 1175.
¶ 40 "The right of trial by jury shall remain inviolate." Const. art. I, § 21; see also CR 38. "Due process is satisfied, however, if, before entering a default judgment or dismissing a claim or defense, the trial court concludes that there was `a willful or deliberate refusal to obey a discovery order, which refusal substantially prejudices the opponent's ability to prepare for trial.'" Behr, 113 Wash.App. at 330, 54 P.3d 665 (internal quotation marks omitted) (quoting White v. Kent Med. Ctr., Inc., 61 Wash.App. 163, 176, 810 P.2d 4 (1991)).
¶ 41 Here the trial court adequately and explicitly considered on the record whether lesser sanctions such as a monetary fine, a continuance, striking counterclaims, and admitting into evidence all or some of the other similar incidents of seat back failure, would suffice. However, it determined the only suitable remedy was to enter a default judgment against Hyundai for its continued willful and deliberate failure to comply with Magaña's discovery requests.
¶ 42 The Court of Appeals agreed that Hyundai should have been sanctioned but stated, "[l]esser sanctions here could adequately address the goal of encouraging good faith compliance with discovery requests and timely trial preparation." Magaña II, 141 Wash.App. at 520, 170 P.3d 1165. The Court of Appeals asserted, "default judgment is tantamount to awarding Magaña a several million dollar verdict without requiring him to prove his case." Id. Hyundai argued a default judgment does not allow a jury to decide if the seat back did in fact cause the accident.
¶ 43 The trial court did acknowledge a default judgment would reinstate the prior verdict, which was substantial, but went on to say, "[t]he remedy of default is not dependent upon the amount of potential verdict or in this case, actual damages verdict." CP at 5334. While the amount reinstated is large, this is not because of any wrongdoing on Magaña's part; rather it is due to Hyundai's atrocious behavior in failing to respond to discovery requests throughout the lawsuit.
¶ 44 In addressing whether a monetary fine would suffice, the trial court found it would be difficult to know what amount would be suitable since "Hyundai is a multibillion dollar corporation." CP at 5332-33. It also found a monetary sanction would not address the prejudice to Magaña or to the judicial system. Since there were no counterclaims in this case, the trial court could not strike those as a remedy. The trial court also denied a continuance, which Hyundai proposed. The trial court held that sanctions for discovery violations should not reward the party who has committed the violations and that granting a continuance would only exacerbate the situation. The Court of Appeals disagreed claiming, "[a]llowing Magaña to investigate the incidents of seat failure will shed light on whether Hyundai manufactured and sold a defective product." Magaña II, 141 Wash.App. at 519, 170 P.3d 1165. But as aforementioned, time will not allow Magaña to investigate other incidents because much of that evidence is lost or stale.
¶ 45 Finally the trial court found that admitting into evidence all the other similar incidents of seat back failure would not be *202 adequate because Magaña did not have time to develop those incidents. Both parties agreed it would not be workable to admit other incidents of seat back failure without examination or challenge.
¶ 46 Hyundai argues a default judgment is appropriate only if the discovery violations irremediably deprived the opposing party of a fair trial on its claims or defenses. Hyundai misstates this prong of the test. As aforementioned, the record must show that the discovery violation prejudiced the opposing party's ability to prepare for trial. The test looks at preparing for trial, not having a fair trial.

Attorney Fees and Expenses
¶ 47 In addition to the discovery sanctions issued, the court may require the party failing to respond to discovery to pay reasonable expenses to the other party, including attorney fees. CR 37(d). In its findings of fact the trial court awarded to Magaña the fees and costs incurred because of Hyundai's discovery violations, which would be determined at another hearing.
¶ 48 An award of attorney fees is reviewed for abuse of discretion. Mayer v. City of Seattle, 102 Wash.App. 66, 79, 10 P.3d 408 (2000). "Attorney fee decisions under CR 37 require the exercise of judicial discretion that will not be disturbed on appeal except upon a clear showing of abuse of discretion." Eugster v. City of Spokane, 121 Wash.App. 799, 815, 91 P.3d 117 (2004) (citing Reid Sand & Gravel, Inc. v. Bellevue Prop., 7 Wash.App. 701, 705, 502 P.2d 480 (1972)). A trial court must enter findings of fact and conclusions of law supporting an award of attorney fees. Mahler v. Szucs, 135 Wash.2d 398, 435, 957 P.2d 632, 966 P.2d 305 (1998). The court reviewing the award needs to know if the attorney's services were reasonable or essential to the successful outcome. Id. Here the trial court entered findings of fact and conclusions of law detailing the necessary and reasonable work of Magaña's attorneys. This finding awarding Magaña attorney fees and costs should be reinstated since default judgment against Hyundai was proper.
¶ 49 In accordance with RAP 18.1(b)[9] Magaña also requested in his opening brief attorney fees and expenses for responding to the second appeal. Under RAP 18.1(a) a party can recover attorney fees and expenses, if applicable law grants the right to such recovery. Magaña should recover attorney fees and expenses for responding to the second appeal because CR 37(d) is the applicable rule that grants the right to recovery of attorney fees and expenses.

CONCLUSION
¶ 50 Appellate courts may not substitute their discretion for that vested in the trial court, absent abuse. Where there is no abuse of trial court discretion, we may not reverse simply because there are other possible ways the trial court could have possibly exercised it. The trial court properly imposed a default judgment against Hyundai for its willful and deliberate failure to comply with discovery. Accordingly we reverse the Court of Appeals and award Magaña reasonable attorney fees and expenses for responding to this appeal.
WE CONCUR: SUSAN OWENS, CHARLES W. JOHNSON, BARBARA A. MADSEN, DEBRA L. STEPHENS, TOM CHAMBERS, JJ., and TERESA C. KULIK, J. Pro Tem.
J.M. JOHNSON, J. (dissenting).
¶ 51 Hyundai Motor America objected to Jesse Magaña's sweeping discovery requests when they were made in 2000 and 2001. Five years later, and as a second trial[1] was approaching, Magaña finally moved the trial court to compel production. The trial court so ordered, and Hyundai produced voluminous discovery that Magaña claimed could not be analyzed before trial. Magaña then *203 requested a default judgment as sanction. The trial court granted default, allowing Magaña to avoid a jury trial and a decision on the merits, and this court affirms. Because even these circumstances found here are not so extreme as to justify negating the jury trial right protected by the Washington Constitution, I dissent.
¶ 52 Our constitution expressly provides, "The right of trial by jury shall remain inviolate." WASH. CONST. art. I, § 21. Further, this court has held, "`"[i]t is the policy of the law that controversies be determined on the merits rather than by default."'" Little v. King, 160 Wash.2d 696, 703, 161 P.3d 345 (2007) (alteration in original) (quoting Griggs v. Averbeck Realty, Inc., 92 Wash.2d 576, 581, 599 P.2d 1289 (1979) (quoting Dlouhy v. Dlouhy, 55 Wash.2d 718, 721, 349 P.2d 1073 (1960))). Given the reverence our state constitution gives to the jury trial right and the important policy of deciding cases on the merits, due process of law demands that a jury trial be allowed to proceed to conclusion on the merits unless such extreme prejudice has occurred that renders a trial on the merits no longer possible. See Smith v. Behr Process Corp., 113 Wash.App. 306, 325-27, 54 P.3d 665 (2002). Thus, an unjustified denial of the jury trial right implicates due process considerations of both the Washington and United States Constitutions. WASH. CONST. art. I, § 3; U.S. CONST. amend. XIV, § 1.
¶ 53 To avoid unconstitutional violations of the jury trial right and due process, a default judgment imposed as a discovery sanction may be granted only in a case clearly showing (1) a party willfully or deliberately violated the discovery rules and orders, (2) the opposing party was substantially prejudiced in its ability to prepare for trial, and (3) the trial court explicitly considered lesser sanctions, which could be tailored to adequately deter, punish, compensate, and educate. Burnet v. Spokane Ambulance, 131 Wash.2d 484, 494, 933 P.2d 1036 (1997); Wash. State Physicians Ins. Exchange & Ass'n v. Fisons Corp., 122 Wash.2d 299, 858 P.2d 1054 (1993). Trial court findings regarding discovery sanctions are reviewed for abuse of discretion. Fisons, 122 Wash.2d at 338, 858 P.2d 1054. Discretion is abused if "the trial court relies on unsupported facts or applies the wrong legal standard," or if the court "`adopts a view "that no reasonable person would take."'" Mayer v. Sto Indus., Inc., 156 Wash.2d 677, 684, 132 P.3d 115 (2006) (quoting State v. Rohrich, 149 Wash.2d 647, 654, 71 P.3d 638 (2003) (quoting State v. Lewis, 115 Wash.2d 294, 298-99, 797 P.2d 1141 (1990))).
¶ 54 The three-part Burnet test is conjunctive and discrete, not disjunctive nor cumulative. Thus, a strong showing of one prong may not satisfy insufficient proof of the others. Given the record before us, a reasonable court could conclude that Hyundai willfully violated the discovery rules. However, willfulness is only one prong. The substantial prejudice and lesser sanctions prongs are not established on this record. Allowing willfulness alone to satisfy all three prongs is violative of the test in Burnet and therefore an abuse of discretion.

SUBSTANTIAL PREJUDICE
¶ 55 Magaña makes two prejudice arguments: (1) Magaña did not have sufficient time to review the voluminous discovery Hyundai ultimately produced, and (2) Hyundai's conduct may have caused some evidence to become stale, impeding Magaña from presenting his claims to a jury. These arguments are not established by the facts.

A. Time Restraint

¶ 56 Magaña's counsel waited nearly five years until approximately three months before trial to move to compel production (of documents requested previously in an extremely broad request for production). When the trial court granted his motion to compel, Magaña argued there was insufficient time to investigate the discovery produced before trial. In light of the nature of Magaña's broad discovery request, and the delay of Magaña's motion to compel until three months before trial, counsel's claim of prejudice because of the amount of discovery produced is unpersuasive.
¶ 57 Magaña's early discovery requests to Hyundai, a worldwide corporation, included the production of "copies of any and all documents, *204 including but not limited to complaints, answers, police reports, photographs, depositions or other documents relating to complaints, notices, claims, lawsuits or incidents of alleged seat back failure on Hyundai products for the years 1980 to present." Clerk's Papers (CP) at 3728 (emphasis added). Thus, the request covered millions of Hyundai vehicles manufactured over multiple decades. Hyundai's consistent objections to the scope of these requests put Magaña on notice that Hyundai was not providing all possibly responsive documents.[2] Undoubtedly, Magaña's counsel knew that a motion to compel production would either result in a large volume of documents or have been limited by the court.
¶ 58 The timing of the 2005 motion to compel also undermines Magaña's argument. Magaña filed his complaint in February 2000 and discovery was first sent in 2000 and 2001. A first trial was held with substantial evidence. Due to Magaña's improper use of an expert witness, and the trial court's error in admitting that evidence, the verdict was reversed by the Court of Appeals.
¶ 59 Magaña knew on May 23, 2005, that the retrial was set for January 17, 2006, yet waited until October 27, 2005, to move to compel. Magaña's counsel had Hyundai's responses and yet waited nearly five years until the second trial was approaching to move to compel. If Hyundai's failure to produce Magaña's requested discovery was a violation of discovery rules, then Hyundai may be sanctioned. But the ultimate sanction of default judgment should not be inflicted on a party where the opposing party waited years to move to compel, especially when the opposing party had notice of the extent of the discovery requests.[3]

B. Staleness

¶ 60 Despite claiming that they lacked time to review Hyundai's discovery production or investigate, Magaña's counsel also argues that this discovery contains invaluable evidence that has become stale. These arguments are contradictory: one cannot know that evidence has gone stale without conducting an investigation and analysis.
¶ 61 Magaña's claim of staleness appears to be based on only two facts: Magaña's unsuccessful attempts to locate accident victims identified in the discovery and one witness' testimony that she no longer retained the seat back from her Hyundai accident. These facts do not support a finding of extreme prejudice under the appropriate standard of review.
¶ 62 Magaña's personal attempts to locate parties identified in the discovery production by mere phone calls are insufficient to justify his claim that evidence has gone stale. Magaña is represented by sophisticated attorneys who have experience locating witnesses. Magaña himself, not his attorneys or their support staff, attempted to locate these parties, and only by phone. His attorneys had specifically instructed Magaña to search for the individuals, yet did not undertake investigation themselves.[4] Unsuccessful phone calls made by Magaña are an insufficient basis under evidentiary standards to find that witnesses cannot be found.
¶ 63 Ms. Holcomb's testimony also does not justify a finding of prejudice. Ms. Holcomb's accident facts were far different. She was struck from behind while driving a 1992 Hyundai Scoop. Verbatim Report of Proceedings (Jan. 17, 2006) at 105. Ms. Holcomb was in the driver's seat; there was no passenger; Ms. Holcomb's car was not moving when it was hit nor did it spin or flip; her air bag did not deploy. Id. at 98-111. Ms. Holcomb's seat back was damaged in the accident, and though she kept the seat for *205 several years, she lost it at some point. Id. Despite explicitly basing its findings of fact in part on Ms. Holcomb's testimony, the trial court could not find that the loss of Ms. Holcomb's seat actually prejudiced Magaña.
¶ 64 Burnet requires actual, not speculative, prejudice to invoke CR 37(b)(2)'s "harsher" penalties. Insufficient time to investigate discovery materials, without more, only justifies speculation that prejudice may occur. That is insufficient under Burnet to justify abrogating the jury right.
¶ 65 A finding that actual, substantial prejudice has been shown is not supported by the facts here if considered under the proper legal standard. The trial court's finding of substantial prejudice is thus an abuse of discretion.

LESSER SANCTIONS WERE APPROPRIATE
¶ 66 Lesser sanctions could protect the right to have a jury decide the case on the merits. We have declared that "the court should impose the least severe sanction that will be adequate to serve the purpose of the particular sanction, but not be so minimal that it undermines the purpose of discovery," namely to deter, punish, compensate, and educate. Burnet, 131 Wash.2d at 495-96, 933 P.2d 1036; see also Fisons, 122 Wash.2d at 355-56, 858 P.2d 1054. If necessary, courts may impose more than one type of sanction for a discovery violation. Here, a combination of lesser sanctions would have adequately served the Fisons purposes. The trial court rejected a combination of lesser sanctions and instead imposed the harshest sanction, denying the constitutional right to a jury trial.
¶ 67 The trial court rejected a continuance, stating that this would reward Hyundai, which had sought a trial continuance. The court also noted that a continuance would mean added costs.[5]
¶ 68 However, a continuance would largely remedy the prejudice Magaña argues. More time would allow further investigation of the discovery. Also, Magaña's monetary concerns are clearly addressable by monetary sanctions in the form of litigation costs, as well as an advance against a potential damages award for immediate medical costs, an option suggested or agreed to by Hyundai.
¶ 69 The trial court rejected a monetary sanction, stating that Hyundai is a multibillion dollar corporation and that money "would not in any way address the prejudice to the plaintiff or to the judicial system." CP at 5333. Money is the heart of Magaña's case, and substantial fines could affect Hyundai and its litigation strategies. Arriving at the proper monetary sanction is undoubtedly more difficult than ordering a default judgment, but "difficulty of determination" is not one of the Fisons-enumerated purposes of sanctions.
¶ 70 The trial court also rejected the alternative that accident records produced by Hyundai be treated as admissions of those substantially similar accidents. The court thought that this would equate to a default judgment. However, if a continuance were granted, the parties could properly analyze whether any evidence had gone stale due to Hyundai's discovery violations. Where evidence had gone stale, that evidence could be admitted as proof of any incident substantially similar to that of Magaña's.[6] This course would preserve the jury trial right.
¶ 71 The trial court's error here was in failing to fully consider numerous available lesser sanctions other than default. This was an abuse of discretion. A combination of a continuance, monetary sanctions, and admitting any evidence that had become stale after Hyundai should have produced would not be a reward to Hyundai. The court could have fashioned an appropriate vehicle to deter, punish, compensate, and educate, while still preserving the jury trial.

*206 CONCLUSION
¶ 72 This is a nearly unique case of discovery violations. The problem was worsened by error at the first trial, leading to reversal by the Court of Appeals and remand. However, the right to a jury trial is enshrined in our state constitution and may be set aside as a sanction only in the most extreme circumstances, when discovery violations are willful, the violations substantially prejudice a party's ability to proceed to trial, and no lesser sanctions can be devised. Because all three requirements are not met in this case, and a (second) jury trial could have been provided, as our constitution guarantees, I respectfully dissent.
WE CONCUR: GERRY L. ALEXANDER, C.J.
NOTES
[1] The Court of Appeals affirmed as to Smith. Smith then filed a motion in the trial court asking it to include the issue of allocation of fault between Hyundai and Smith in the retrial. Hyundai opposed the motion, asserting its fault should either be 60 percent or nothing. The trial court granted Smith's motion to include the issue of allocation of fault in the retrial.
[2] Sled tests are simulated vehicle crashes. Hyundai disclosed to Magaña simulations of frontal collisions of Hyundai vehicles but not simulations of rear impact crashes as requested by Magaña in request for production 6.
[3] The Martinez, McQuary, and Salizar claims involved 1995-1999 Hyundai Accents and were not provided to Magaña. See "Willfulness" discussion, infra, at 198.
[4] The seat in the Elantra was substantially similar to the seat in the Accent and this was not initially disclosed by Hyundai.
[5] Hyundai urges us to review a trial court's grant of default judgment de novo. We decline to overturn precedent and adopt that standard here as the trial court is in a better position than an appellate court to determine the appropriate discovery sanctions.
[6] This attorney is not admitted to practice law in Washington, but he was admitted pro hac vice in this case to represent Hyundai. The trial court found that he had previously represented Hyundai in Parks v. Hyundai Motor Am., Inc., 258 Ga.App. 876, 575 S.E.2d 673 (2002). In Parks "Hyundai's response to discovery requests was at issue," and Hyundai produced 33 responsive OSIs (other similar incidents) after the case was remanded by the appellate court. CP at 5902. The trial court found, "[t]here is a similarity of circumstances of the Parks case and the case herein regarding production of OSI documents by Hyundai." Id. This attorney's actions in this case and the Parks case seem to establish a pattern that Hyundai willfully withholds discovery. This individual is not to be confused with Hyundai's able counsel on appeal.
[7] The trial court correctly found:

[t]he fact the plaintiff focused on certain discovery issues does not indicate in an affirmative manner that the plaintiff ever abandoned his request for obtaining evidence of other seat back failures. It would be unreasonable, and not supported by the totality of the evidence, to conclude Plaintiff abandoned the issue of seatback failure which was the central issue of the trial.
CP at 5323.
[8] After expert testimony, the trial court found, and the Court of Appeals agreed, the seats in the Elantra were similar to the seats in the Accent.
[9] RAP 18.1(b) provides: "The party must devote a section of its opening brief to the request for the [attorney] fees or expenses. Requests made at the Court of Appeals will be considered as continuing requests at the Supreme Court."
[1] A verdict from the first trial was reversed by the Court of Appeals and remanded.
[2] This surely does not excuse the fact that Hyundai should have sought a protective order against the scope of Magaña's requests for production.
[3] The extent of pretrial tactics is unusual here. By handing Magaña a jury-free victory, this court is not establishing a broad precedent that legal gamesmanship will be rewarded.
[4] Magaña was "asked to conduct [an] investigation" by his attorneys and conducted this investigation "on [his] attorney's behalf." Verbatim Report of Proceedings (Jan. 17, 2006) at 90. Magaña was unable to locate some individuals involved in old accidents. Others did not remember enough information. There is no evidence that they would have remembered more helpful information had they been questioned earlier in this litigation.
[5] This concern exists in part because counsel asked improper questions to an expert witness at the first trial and then compounded the error by opposing a curative jury instruction.
[6] Evidence that went stale after Magaña's initial discovery requests but before Hyundai actually produced is clearly distinct from evidence that had gone stale before Magaña made any requests for production. Taking evidence from the latter category as admitted is clearly a "harsh" remedy within the meaning of Burnet and should only be allowed in the most extreme of circumstances.