FILED
COURT OF APPEALS
DIVISION II

2014 JUN 24 AM 9: 03

STATE OF WASHINGTON
BY_____
DEPUTY

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| RICHARD APPLEGATE and KAREN APPLEGATE, husband and wife, | No. 43043-6-II |
| Appellants/Cross-Respondents, | |
| v. | |
| WASHINGTON FEDERAL SAVINGS, a Savings and Loan subsidiary of WASHINGTON FEDERAL, INC., a Washington Corporation; | |
| Respondent/Cross-Appellant, | |
| HARBOR HOME DESIGN, INC., a Washington Corporation; CHARLES BUCHER and JANE DOE BUCHER, husband and wife, and the marital community comprised thereof; | |
| Respondents, | |
| KITSAP BANK, a Washington Financial Institution; OHIO CASUALTY INSURANCE CO., Bond No. 3620699; and AMERICAN INTERNATIONAL GROUP, INC., re Policy No. 06LX0093840897, | UNPUBLISHED OPINION |
| Defendants. | |

WORSWICK, J. — Richard and Karen Applegate appeal from the trial court's orders

following a jury verdict in favor of Washington Federal Savings (WFS) and Harbor Home

Design (HHD). The Applegates also challenge the trial court's pre-trial ruling granting summary

judgment to WFS on their claims for negligence and breach of fiduciary duty. WFS cross-appeals, challenging the trial court's denial of its attorney fees request.

The Applegates argue that the jury verdict was improper because (1) interrogatory 1 on the WFS special verdict form confused the jury as to the Applegates' breach of contract claim against WFS, (2) the trial court improperly excluded the Applegates' expert witness Robert Floberg for a discovery violation, and (3) the trial court improperly excluded the Applegates' lay witness Diana Behrens under ER 404(b). WFS argues that the trial court erroneously ruled that the contract's attorney fee provision did not apply to the defense of a breach of contract claim.

Because the jury instructions were proper, and because the trial court did not err in excluding Floberg's or Diana's testimony, we affirm the jury verdict. Additionally, because the jury established as a fact that HHD committed no wrongdoing related to its dealings with the Applegates, we hold that whether the trial court erred in granting summary judgment on the Applegates' negligence and breach of fiduciary duty claims is a moot issue. Finally, because the custom construction loan contract's attorney fee provision entitles WFS to attorney fees as the prevailing party, we reverse the trial court's denial of attorney fees to WFS and remand for an award of attorney fees, limited to fees and costs incurred defending against the Applegates' contract action.

## FACTS

Richard and Karen Applegate sought to build a home. The Applegates took out a $550,000 mortgage with WFS to finance the home's construction and hired HHD to build it.

2

Charles Bucher was the president and sole employee of HHD.[1] The Applegates signed a custom construction loan contract with WFS and a residential construction contract with HHD.

A.    *The Applegates' Contract with WFS*

1. *Custom Construction Loan Contract*

Under the terms of the custom construction loan contract, WFS maintained control and possession of the construction loan principal throughout the home's construction, distributing it periodically as HHD completed work.

Under the contract, WFS had the authority to distribute the construction loan principal directly to either the Applegates or HHD, in the form of "draws" against the borrowed principal. WFS had written policies and procedures for the management of custom construction loans. The Applegates and HHD, but not WFS, signed a written statement, separate from the contract, detailing these procedures. The Applegates allege it was their understanding that WFS would follow these procedures. The written statement stated in part:

> Draws will be based on the percentage of completion per the submitted approved contract, plans, and specifications, [unless otherwise agreed] in writing. WFS will not advance any money for items not yet delivered and installed. WFS shall at all times have the right to enter upon the property during the period of construction work, and if the work is not satisfactory [WFS] shall have the right to stop the work and order its replacement, whether or not the unsatisfactory work has already been incorporated into the improvements.
> On-site inspections are typically completed between the 1st and 9th day of each month. . . .
> Prior to the payment of any draw, a Certificate of Job Progress, signed by both [HHD] and the [Applegates] will be required. Checks will be issued payable to [HHD] *and* the [Applegates] *unless* WFS is previously instructed otherwise in

---

[1] For the purposes of clarity, we refer to Charles Bucher, Jane Doe Bucher, and HHD collectively as HHD. We refer to Washington Federal Savings and its parent company Washington Federal Incorporated collectively as WFS. We refer to individuals when necessary, and use first names for clarity.

3

writing. **However, in all cases, the final draw must be made payable to [HHD] *and* the [Applegates].**

Exhibit 62 at 1.

When managing the Applegates' construction loan, WFS usually mailed the check and a certification of job progress to HHD's office to collect the required signatures on the certification (of Charles for HHD and Richard for the Applegates), rather than waiting for the parties to come into WFS's office to pick up the check and sign the certification. WFS contended that it did this because the Applegates were often out of town, and could not timely come in to WFS's office to sign the certification.

B.     *Disputes During Construction*

The Applegates contended that they began to have disputes with HHD and WFS during the home's construction. The Applegates contended that HHD, among other things, (1) did not follow the homes' building plans, (2) purchased substandard construction materials but charged for high-quality construction materials, (3) double-billed the Applegates, and (4) failed to deduct the Applegates' $52,262.50 deposit from its initial draw request.

In addition, the Applegates contended that someone forged Karen's signature on the Applegates' residential construction contract with HHD, and that Charles forged Richard's signature on both a draw check for $108,172.00 and on the corresponding certification. Regarding Richard's signatures, Charles admitted to signing Richard's name on the draw check for $108,172.00. But Charles contended that he did this because Richard told Charles to sign the check in Richard's name, and that Richard later signed the corresponding certification. Richard contended that he could not remember signing the certification and that he did "not doubt that

4

[Charles] forged [his] name on the [corresponding] Certification as well." Clerk's Papers (CP) at 573.

The Applegates contended that WFS failed to prevent HHD's wrongdoing through a multitude of bad acts. First, the Applegates contended that Joni Cross, the Applegates' main contact at WFS, refused the Applegates' requests to timely provide them with copies of HHD's invoices and draw requests, which delayed their discovery of HHD's bad acts. Second, the Applegates contended that WFS disbursed funds to HHD without signed certifications. Third, the Applegates contended that WFS consistently sent draw checks to HHD, despite the Applegates' request that WFS disburse the draw checks to them directly. Fourth, the Applegates contended that WFS approved distributions of funds to HHD for incomplete construction. Fifth, the Applegates contended that WFS failed to remedy HHD's forgery of the $108,172.00 draw check after the Applegates informed WFS of it. Finally, the Applegates contended that WFS disbursed the remaining balance of the construction loan principal as a "final draw" before HHD completed the home, despite the contract stating that those funds were not to be distributed until the home's completion.

C. *The Applegates' Suit*

The Applegates sued WFS claiming, among other things, negligence, breach of fiduciary duty, and breach of contract. The trial court summarily dismissed the Applegates' claim against WFS for breach of fiduciary duty on grounds that WFS had no fiduciary duty to the Applegates. Later, the trial court summarily dismissed the Applegates' claim against WFS for negligence under the independent duty doctrine, and allowed the case to proceed against WFS on the breach of contract claim.

The Applegates also sued HHD. The claims against HHD included breach of contract, fraud, and wrongful conversion. The matter was tried before a jury.

D.     *Exclusion of the Applegates' Witnesses*

1. *Exclusion of Expert Forensic Handwriting Examiner Robert Floberg*

The Applegates sought to admit the expert testimony of Robert Floberg, a forensic handwriting examiner, to support their allegations of forgery: that Charles forged Richard's signature on the certification that authorized the $108,172.00 draw check and that Karen Applegate's signature on the residential construction contract was forged. The trial court excluded this witness as a discovery sanction for the Applegates' failure to timely disclose Floberg's opinion.

The Applegates filed their Second Amended Complaint in January of 2010. After granting the parties two continuances, the trial court set the trial date at June 20, 2011, and set a case schedule that required the Applegates to disclose their rebuttal witnesses by February 28, 2011.

On April 14, 2011, six weeks past the rebuttal witness disclosure deadline, the Applegates filed an amended disclosure of witnesses, listing seven previously undisclosed witnesses (including Floberg). HHD moved to exclude the Applegates' newly disclosed witnesses, including Floberg. The trial court did not exclude the Applegates' witnesses at that time, stating, "Striking witnesses . . . is the harshest remedy that the [c]ourt can impose. At this stage, I'm more inclined to try to work a way where [the] defense will not be prejudiced by these witnesses, rather than striking them." Verbatim Report of Proceedings (VRP) (May 6, 2011) at 15.

6

Instead of striking the newly disclosed witnesses, the trial court continued the trial date a third time to October 4, 2011. The new case schedule set a new discovery cutoff of August 16, 2011. The trial court stated in the presence of both parties that the new discovery cutoff should "be a line in the sand that will not be . . . stepped over." VRP (May 6, 2011) at 17.

On June 10, 2011, HHD asked for the opinions of the Applegates' newly disclosed expert witnesses. On July 1, 2011, HHD again asked the Applegates for the experts' opinions, and specifically asked the Applegates to state whether Floberg would give any opinion at all. HHD also stated on July 1, 2011 that it would move to strike the opinions of any experts who failed to reach opinions by the discovery cutoff of August 16, 2011.

Floberg's original deposition was scheduled for August 16, 2011, but did not occur. On August 18, 2011, two days after the discovery cutoff, the Applegates emailed to inform HHD that they were going to have Floberg examine two documents for potential forgeries: Richard's signature on the certification authorizing the expenditure on the $108,172.00 draw check and Karen Applegate's signature on the residential construction contract. On August 31, 2011, which the Applegates claim was immediately after Floberg told them that he needed to see the originals of both documents, the Applegates provided Floberg's tentative opinion that Richard's signature on the certification and Karen's signature on the residential construction contract were potential forgeries, but stated that Floberg needed the original documents to engage in a more formal analysis. In September of 2011, the parties argued over whether to depose Floberg in King County or Pierce County, which further delayed the deposition.

HHD moved to exclude Floberg's opinion as a discovery sanction for the Applegates' failure to timely disclose his opinion. The Applegates argued that they delayed providing Floberg's opinion because Floberg needed to see the original documents before making a final opinion on whether a forgery existed.

The Applegates argued that they did not want to travel to King County to view the original documents when they could instead simply wait until Floberg's eventual deposition, which they believed had to be conducted in Pierce County. The Applegates argued that the conflict over where to conduct Floberg's deposition delayed both the deposition and Floberg's examination of the original documents.

The trial court excluded Floberg's testimony. In its written order, the trial court found that the Applegates' failure to timely disclose Floberg's opinion was willful and prejudicial, and that lesser sanctions were inadequate.

2. *Exclusion of Lay Character Witness Diana Behrens*

The Applegates also sought to introduce the testimony of Diana Behrens, who had previously hired HHD to build her and her husband's house. Diana was prepared to testify that HHD ruined their house, went over budget, and stole at least $75,000 from her and her husband David. HHD submitted David Behrens's declaration which stated that HHD was not deceptive or unfair and did not steal any money from the Behrens.

The trial court excluded Diana's testimony under ER 404(b), ruling that it constituted evidence going to HHD's character so as to establish conformity therewith in the Applegates' case. The trial court stated that "[t]he problem I have is that all these things that[] [Diana] is

8

saying are simply allegations. They've not been proven. They're just simply her opinion as to what occurred in her situation and never went to trial." VRP (Oct. 6, 2011) at 62-63.

E.     *WFS Special Verdict Form*

The trial court provided the jury with instructions. Jury instruction 2 stated in part:

> In addition to the claims against [HHD], [the Applegates] also claim that [WFS] breached its construction loan agreement with the [Applegates] by failing to properly inspect the residence while it was under construction to make sure that amounts requested by [HHD] for building the [home] were proper.

CP at 2699.

In addition to the jury instructions, the trial court provided the jury with two special verdict forms: one for the Applegates' claims against WFS and one for the Applegates' claims against HHD. WFS interrogatory 1 asked the jury:

> Did Washington Federal Savings ("WFS") breach its contract to provide a construction loan to the Applegates?

CP at 2739. The Applegates took exception to WFS interrogatory 1. They requested that the trial court remove the reference to a "construction loan" and reword the interrogatory to ask, "[D]id Washington Federal Savings breach its contract." VRP (Oct. 31, 2011) at 393. The trial court did not adopt the Applegates' proposed modification.

F.     *Jury Verdict and WFS's Motion for Attorney Fees*

This case proceeded to a jury trial that resulted in defense verdicts. The jury answered "No" to WFS interrogatory 1, finding that WFS did not breach its contract to provide a construction loan to the Applegates.

9

The jury resolved three issues in favor of HHD through its answers to the interrogatories on the HHD special verdict form. First, the jury answered "No" to HHD interrogatory 1, finding that HHD did not breach its contract with the Applegates. Second, the jury answered "No" to HHD interrogatory numbers 9 and 10, finding that neither HHD nor the Buchers committed fraud in respect to the draws and billings submitted to the Applegates. Third, the jury answered "No" to HHD interrogatory numbers 12, 13, 15, and 16, finding that neither HHD nor Charles wrongfully converted the Applegates' funds by failing to deduct the Applegates' $52,262.50 deposit from their initial draw request, or by negotiating the $108,172.00 draw check.

Following the jury verdict, WFS asked for $264,115.32 in attorney fees pursuant to its contract with the Applegates. The contract's attorney fee provision stated in part:

> If [WFS] seeks the services of an attorney . . . *to enforce any provisions* of this Agreement, the Note, the Security Instrument or other promises of the [Applegates] as contained in the loan documents, [WFS] shall be entitled to all of its attorney's fees and costs of enforcement.

Exhibit 61 at 5 (emphasis added).

The trial court did not award fees to WFS because the attorney fee provision authorized fees only for "enforcement" of a contract. The trial court ruled that the attorney fee provision did not intend to encompass WFS defending against a breach of contract claim.

The trial court awarded WFS only $200.00 in statutory attorney fees under RCW 4.84.080. The trial court awarded HHD $200 in statutory attorney fees under RCW 4.84.080, $500.00 in attorney fees under CR 37(c), $1,098.91 in costs and litigation expenses, and $500.00 in sanctions.

No. 43043-6-II

On appeal, the Applegates challenge the trial court's summary judgment ruling and the jury verdict. WFS's cross-appeal challenges the trial court's decision against awarding attorney fees pursuant to the contract.

ANALYSIS

I. JURY VERDICT

A.    *Jury Instructions and Special Verdict Forms*

The Applegates argue that WFS interrogatory 1 misled the jury, such as to warrant a retrial. We disagree.

We review challenged jury instructions de novo to ensure their legal sufficiency. *Hough v. Stockbridge*, 152 Wn. App. 328, 342, 216 P.3d 1077 (2009). Jury instructions and special verdict forms are legally sufficient if they allow the parties to argue their theories of the case, are not misleading, and when taken as a whole, properly inform the jury of the applicable law. *Capers v. Bon Marche*, 91 Wn. App. 138, 142, 955 P.2d 822 (1998).

Where the jury instructions are held legally sufficient, we review their specific wording for an abuse of discretion. *Bodin v. City of Stanwood*, 130 Wn.2d 726, 732, 927 P.2d 240 (1996); *Singh v. Edwards Lifesciences Corp.*, 151 Wn. App. 137, 151, 210 P.3d 337 (2009). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 668, 230 P.3d 583 (2010).

Here, jury instruction 2 clarified WFS interrogatory 1. Jury instruction 2 stated in part:

[The Applegates] also claim that [WFS] breached its construction loan agreement with the [Applegates] by failing to properly inspect the [home] while it was under construction to make sure that amounts requested by [HHD] for building the [home] were proper.

11

CP at 2699. WFS interrogatory 1 asked, "Did Washington Federal Savings ("WFS") breach its contract to provide a construction loan to the Applegates?" CP at 2739.

Jury instruction 2 makes clear that the claim against WFS was that WFS failed to honor the terms of its contract by failing to properly inspect the home and properly manage and distribute the construction loan principal to HHD. Thus, jury instruction 2 resolved any ambiguity within WFS interrogatory 1 by clarifying that interrogatory's meaning. For this reason, the instructions were legally sufficient because the jury instructions allowed the Applegates to argue their theory of the case, were not misleading, and when taken as a whole, properly informed the jury of the applicable law.

Because the jury instructions were legally sufficient, we review their specific wording for an abuse of discretion. *Bodin*, 130 Wn.2d at 732; *Singh*, 151 Wn. App. at 151. Here, the difference between WFS interrogatory 1's wording and the Applegates' requested alternative was not significant enough to make the trial court's decision to choose the former manifestly unreasonable. Thus, the trial court did not abuse its discretion in deciding to word the legally sufficient WFS interrogatory 1 as it did.

B.      *Exclusion of Floberg*

The Applegates next argue that the trial court erred by excluding Floberg's expert testimony. We disagree.

The trial court is in the best position to determine appropriate discovery sanctions, and thus, we normally defer to its decision. *Magaña v. Hyundai Motor Am.*, 167 Wn.2d 570, 583, 220 P.3d 191 (2009). We will overturn the trial court's decision to exclude witnesses only for abuse of discretion. *Jones v. City of Seattle*, 179 Wn.2d 322, 337, 314 P.3d 380 (2013). A trial

court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *Salas,* 168 Wn.2d at 668.

Pierce County Local Rule (PCLR) 26 states the following requirements for cases operating pursuant to a case schedule:

> **(d) Scope of Disclosure**. Disclosure of witnesses under this rule shall include the following information:
>
> . . . .
>
> > **(3) Experts.** *A summary of the expert's anticipated opinions and the basis therefore* and a brief description of the expert's qualifications or a copy of curriculum vitae if available.
>
> **(e) Exclusion of Testimony.** Any person not disclosed in compliance with this rule shall not be called to testify at trial, unless the court orders otherwise for good cause and subject to such conditions as justice requires.

(Emphasis added.)

Before excluding a witness for a violation of a local rule like PCLR 26, the trial court must consider, on the record, the three factors from our Supreme Court's decision in *Burnet v. Spokane Ambulance,* 131 Wn.2d 484, 933 P.2d 1036 (1997). *Jones,* 179 Wn.2d at 338. Considering the *Burnet* factors on the written order excluding a witness is sufficient.[2] *See Teter v. Deck,* 174 Wn.2d 207, 217, 274 P.3d 336 (2012).

The first *Burnet* factor is willfulness. *Magaña,* 167 Wn.2d at 584. A party's disregard of a court order without a reasonable excuse or justification is considered willful. 167 Wn.2d at 584.

---

[2] Whereas PCLR 26 creates a presumption of exclusion (rebutted by good cause and justice concerns), the *Burnet* factors create the opposite presumption of admission (rebutted by evidence of willfulness, prejudice, and the inadequacy of lesser sanctions). *Jones,* 179 Wn.2d at 343. In the case of witness exclusion, Our Supreme Court held that *Burnet* controls over local discovery rules. *Jones,* 179 Wn.2d at 344.

The second *Burnet* factor is prejudice to the opposing party. 167 Wn.2d at 584, 587. Prejudice looks not to whether abusive discovery prevented the opposing party from obtaining a fair trial, but rather asks whether the abusive discovery prejudiced the opposing party's ability to prepare for the trial. 167 Wn.2d at 589.

The third *Burnet* factor requires the trial court to consider lesser available sanctions. 167 Wn.2d at 584, 590. The trial court must impose the least severe sanction that would serve the underlying purpose of imposing a discovery sanction in the given case. 167 Wn.2d at 590. But the sanctions must not be too light, such that it undermines the purpose of discovery. 167 Wn.2d at 590. "The purposes of sanctions orders are to deter, to punish, to compensate and to educate." *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 356, 858 P.2d 1054 (1993). Another purpose of sanctions is to "insure that the wrongdoer does not profit from the wrong." *Wash. State Physicians Ins. Exch. & Ass'n*, 122 Wn.2d at 356.

Here, the trial court found the three *Burnet* factors of willfulness, prejudice, and the inadequacy of lesser sanctions in its written order. The trial court did not abuse its discretion because the record supports the trial court's finding that the Applegates committed a willful and prejudicial discovery violation for which lesser sanctions were inadequate.

The Applegates' violation of the trial court's order was the Applegates' second violation of the trial court's scheduling orders. The Applegates disclosed Floberg's identity a month and a half after the deadline for witness disclosure. Rather than exclude Floberg because of this deadline violation, the trial court continued the trial to allow HHD to conclude discovery on the Applegates' new witnesses. The trial court imposed a new discovery cutoff at this time, stating in the presence of both parties that the new deadline was "a line in the sand that will not be . . .

14

stepped over." VRP (May, 6, 2011) at 16-17. Nonetheless, the Applegates failed to disclose Floberg's potential opinion until August 31, 2011.[3]

The Applegates' disregard of orders is willful unless the Applegates provide a reasonable excuse or justification. Here, the single excuse that the Applegates had for failing to timely disclose Floberg's opinion was that they did not want to have Floberg travel to King County to view the original certification and residential construction contract, when they could instead simply wait until Floberg's eventual deposition.

But the dispute over where Floberg would view the original documents began after August 31, 2011, two weeks beyond the discovery deadline of August 16, 2011. Thus, the trial court did not abuse its discretion in finding that the second violation was willful because the record supports this finding. *Magaña*, 167 Wn.2d at 584.

Second, the Applegates' failure to timely provide HHD with information as to Floberg's opinion regarding forgery prejudiced HHD by preventing HHD from properly preparing its case. The Applegates did not inform HHD which specific documents Floberg would review until August 18, 2011, and did not tell HHD that Floberg found a potential forgery on one of the documents until August 31, 2011.

---

[3] The Applegates argue that the April 14, 2011 notification of Floberg's identity as a witness constituted a "*summary of the expert's anticipated opinions and the basis therefore*" for purposes of PCLR 26(d)(3). The Applegates' notification stated the following:

> Mr. Floberg is a forensic document examiner. He is expected to testify regarding authenticity of signatures and documents submitted by Charles Bucher. CV attached.

CP at 3525. We affirm the trial court's determination that this does not constitute a sufficient "summary of the expert's anticipated opinions and the basis therefore." PCLR 26(d)(3).

After learning that Floberg had found a potential forgery, HHD had to consider hiring a handwriting expert. HHD would also have needed time to prepare for Floberg's deposition, depending on his final opinion. Late disclosure of Floberg's opinion hindered this. Thus, it was not an abuse of discretion for the trial court to find that the Applegates' discovery violation was prejudicial to HHD because the record supports this finding.

Finally, the trial court already granted a continuance due to the Applegates' prior discovery violation. The Applegates' actions demonstrated that granting yet another continuance would undermine the purpose of discovery. Monetary sanctions would not account for HHD's additional preparation, and would thus, fail to "insure that the wrongdoer does not profit from the wrong." *Wash. State Physicians Ins. Exch. & Ass'n*, 122 Wn.2d at 356. Thus, the trial court did not abuse its discretion by excluding Floberg for the Applegates' second violation of a discovery order because the record supports its findings on the three *Burnet* factors.

C.     *Exclusion of Diana Behrens*

The Applegates argue that the trial court erred in excluding Diana Behrens's testimony under ER 404(b) because her testimony was properly admissible to prove an absence of mistake or accident. We disagree.

We review the exclusion of evidence under ER 404(b) for abuse of discretion. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). A trial court abuses its discretion if its decision is based on untenable grounds or untenable reasons. *Salas*, 168 Wn.2d at 668-69.

ER 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Evidence of a person's prior misconduct is admissible only when the party seeking to admit the evidence (1) demonstrates by a preponderance of the evidence that the misconduct occurred, (2) identifies the purpose for the evidence's admission, (3) establishes the evidence's relevance to proving an element of the charged crime, and (4) weighs the evidence's probative value against its prejudicial effect. *State v. Gresham*, 173 Wn.2d 405, 421, 269 P.3d 207 (2012). A party seeking to introduce evidence under ER 404(b) has the burden of proving the first three of these elements, and we presume that evidence of prior misconduct is inadmissible. *Gresham*, 173 Wn.2d at 421. Regarding the fourth element, the trial court should balance the probative value of the evidence against its prejudicial effect on the record before using its discretion to admit evidence under ER 404(b). *State v. Gogolin*, 45 Wn. App. 640, 645, 727 P.2d 683 (1986).

Here, the trial court said, "The problem I have is that all these things that[] [Diana] is saying are simply allegations. They've not been proven. They're just simply her opinion as to what occurred in her situation and never went to trial." VRP (Oct. 6, 2011) at 62-63. Diana's testimony consisted of allegations about HHD's alleged wrongs against Diana and her husband David. David declared that HHD committed no wrongdoing. The Applegates cite nothing that lends additional support to Diana's allegations. Thus, this determination by the trial court was not so unreasonable as to constitute an abuse of discretion.

If the trial court does not find that a witness's allegations occurred on a more probable than not basis, it has not found the first element of the ER 404(b) test. Exclusion of the witness's character testimony is warranted at this point because the party seeking admission of character evidence must prove each of the first three elements of the ER 404(b) test before the trial court

17

may admit character evidence. *Gresham*, 173 Wn.2d at 421. Thus, the trial court did not abuse its discretion in excluding Diana's testimony under ER 404(b).

### III. MOOTNESS OF THE TRIAL COURT'S SUMMARY JUDGMENT RULINGS

The Applegates argue that the trial court erred by granting summary judgment to WFS on their claims of negligence and breach of fiduciary duty. We do not review this issue because it is moot.

"'A moot case is one which seeks to determine an abstract question which does not rest upon existing facts or rights.'" *State v. G.A.H.*, 133 Wn. App. 567, 572, 137 P.3d 66 (2006) (quoting *Hansen v. W. Coast Wholesale Drug Co.*, 47 Wn.2d 825, 827, 289 P.2d 718 (1955)). We will not review a moot case unless it presents issues of continuing and substantial public interest, considering (1) the public or private nature of the issue presented, (2) the desirability of an authoritative determination which will provide future guidance to public officers, and (3) the likelihood that the question will recur. *In re Marriage of Horner*, 151 Wn.2d 884, 891-92, 93 P.3d 124 (2004).

The jury is the trier of fact. *Jurgens v. Am. Legion, Cashmere Post 64 Inc.*, 1 Wn. App. 39, 43, 459 P.2d 79 (1969). Here, we uphold the jury's defense verdicts. Through a special verdict form, the jury determined that HHD did not breach its contract with the Applegates, commit fraud in respect to the draws and billings submitted to the Applegates, or wrongfully convert the Applegates' funds. Thus, the jury has established as a fact that HHD did not commit any wrongdoing related to its dealings with the Applegates.

The Applegates' claims for negligence and breach of fiduciary duty assert that WFS failed to prevent HHD's wrongdoing. The jury established as a fact that HHD committed no

wrongdoing. WFS cannot have failed to properly protect the Applegates from HHD's wrongdoing when HHD committed no wrongdoing. Thus, whether the trial court erred in granting summary judgment in favor of WFS on these claims is an abstract question that does not rest upon existing facts or rights.

This moot issue does not present issues of continuing and substantial public interest because the issue is essentially private in nature, a determination is not necessary to provide guidance to public officers, and the particular issue raised is unlikely to recur. *See Horner*, 151 Wn.2d at 891-92. Thus, we do not review whether the trial court erred by granting summary judgment to WFS on the Applegates' claims of negligence and breach of fiduciary duty because the issue is moot.

## IV. ATTORNEY FEES ON THE CONTRACT

WFS argues on its cross appeal that RCW 4.84.330 required the trial court to award its attorney fees as the prevailing party under the contract's attorney fee provision. We agree.

We review de novo whether a statute authorizes attorney fees. *Estep v. Hamilton*, 148 Wn. App. 246, 259, 201 P.3d 331 (2008). RCW 4.84.330 states the rule for attorney fees in any action on a contract:

> In any action on a contract . . . where such contract or lease specifically provides that attorneys' fees and costs, which are incurred to *enforce the provisions of such contract or lease*, shall be awarded to one of the parties, the prevailing party, *whether he or she is the party specified in the contract or lease or not*, shall be entitled to reasonable attorneys' fees in addition to costs and necessary disbursements.
>
> . . . .
>
> As used in this section "prevailing party" means the party in whose favor final judgment is rendered.

Where RCW 4.84.330 applies, an attorney fee award is mandatory. *Singleton v. Frost*, 108 Wn.2d 723, 728-29, 742 P.2d 1224 (1987). RCW 4.84.330's statement that attorney fees are reciprocal "[i]n any action on a contract" applies to any action in which a person alleges that another has contract liability. *Herzog Aluminum, Inc. v. Gen. Am. Window Corp.*, 39 Wn. App. 188, 197, 692 P.2d 867 (1984).

RCW 4.84.330 supports awarding attorney fees to a prevailing party under a contractual provision whenever the party-opponent would have been entitled to attorney fees as a prevailing party. *Herzog Aluminum, Inc.*, 39 Wn. App. at 196-97. But a contractual provision that authorizes attorney fees for enforcement of a contract authorizes attorney fees only for claims directly related to the contractual document containing that provision. *Boguch v. Landover Corp.*, 153 Wn. App. 595, 619-20, 224 P.3d 795 (2009).

Here, the Applegates sued to enforce the contract against WFS, and the jury returned a defense verdict on the contract claim. Had the Applegates prevailed on their contract claim, the Applegates would have been entitled to attorney fees under RCW 4.84.330. Thus, RCW 4.84.330 entitles WFS to attorney fees as the prevailing party on the contract claim. *See Herzog Aluminum, Inc.*, 39 Wn. App. at 196-97.

We grant WFS attorney fees because WFS prevailed on the contract claims. But on remand the trial court must segregate the fees and costs incurred defending against the claims directly related to the contractual document containing the attorney fee provision from the fees and costs incurred litigating other claims in this case. This is unless the trial court finds that the claims are "'so related that no reasonable segregation of successful and unsuccessful claims can

No. 43043-6-II

be made.'" *Boguch*, 153 Wn. App. at 620 (quoting *Mayer v. City of Seattle*, 102 Wn. App. 66, 80, 10 P.3d 408 (2000)).

## ATTORNEY FEES ON APPEAL

A. *The Applegates*

The Applegates request attorney fees on appeal, pursuant to RCW 4.84.330. Because the Applegates have not prevailed, they are not a prevailing party entitled to attorney fees under RCW 4.84.330.

B. *HHD*

HHD requests attorney fees on appeal, citing only RAP 18.1. RAP 18.1(b) requires a party to submit argument and citation to authority entitling it to attorney fees on appeal. *Wachovia SBA Lending, Inc. v. Kraft*, 165 Wn.2d 481, 493, 200 P.3d 683 (2009). HHD cited only RAP 18.1, and provided no argument regarding attorney fees in its brief. Thus, we deny HHD's request for attorney fees.

C. *WFS*

WFS requests attorney fees on appeal under RAP 18.1. Where a prevailing party is entitled to attorney fees below, they are entitled to attorney fees if they prevail on appeal. *Sharbono v. Universal Underwriters Ins. Co.*, 139 Wn. App. 383, 423, 161 P.3d 406 (2007). WFS was entitled below to attorney fees incurred defending against the claims directly related to the contractual document containing the attorney fee provision, and WFS has prevailed on appeal. Thus, WFS is entitled to attorney fees incurred defending against the Applegates' appeal of their claims directly related to the contractual document containing the attorney fee provision,

21

subject to compliance with RAP 18.1 and RCW 4.84.330. The commissioner of our court will make an appropriate award upon proper application. RAP 18.1(f); RCW 4.84.330.

We affirm the jury verdict and dismiss the Applegates' challenge to the trial court's summary judgment rulings as moot. We reverse the trial court's ruling denying attorney fees to WFS and remand for an award of attorney fees, limited to fees and costs incurred defending against the Applegates' contract action. Finally, we grant WFS attorney fees on appeal, limited to fees and costs incurred defending against the Applegates' appeal of their claims directly related to the contractual document containing the attorney fee provision, subject to compliance with RAP 18.1 and RCW 4.84.330.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Johanson, C.J.

_____
Bjorgen, J.