IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | No. 31336-1-III |
| | ) | |
| SELISA HUMPHREY, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| LLOYD HUMPHREY, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, J. — Selisa Humphrey appeals from an order of dissolution of her 17-year marriage to Lloyd Humphrey. She contends that the trial court erred in (1) denying her CR 37(b) motion for an order of default as a sanction against Mr. Humphrey for discovery abuses; (2) finding that money removed from a safe in Mr. Humphrey's house was traceable to recent withdrawals from community bank accounts; (3) valuing a gun collection at $40,000; (4) awarding her monthly maintenance of $800; and (5) revoking a pretrial order. Finding no error, we affirm.

## FACTS

Selisa Humphrey and Lloyd Humphrey were married on March 1, 1993, and separated on July 29, 2010. Prior to marriage they lived together for six years. At the time of trial, Ms. Humphrey was age 58 and Mr. Humphrey was age 77. There were no children of the marriage or prior relationship.

Both parties are in poor health and neither was employed at the time of trial. Mr. Humphrey suffers from chronic anxiety, depression, posttraumatic stress disorder and chronic back and neck pain. Mr. Humphrey is retired after a career as a mental health counselor. Ms. Humphrey worked as a receptionist until 2000 when she was found to be totally disabled due to an anxiety disorder and a diagnosis of bipolar disorder.

Before trial, Mr. Humphrey repeatedly delayed the discovery process. On August 26, 2010, Ms. Humphrey served Mr. Humphrey with a first set of interrogatories and request for documents. By March 11, 2011, he had not responded to the requests for information. The court ordered him to have responses in by April 22, 2011. When Mr. Humphrey responded on April 28, 2011, his answers were incomplete. On May 23, 2011, the court ordered that the outstanding discovery was to be provided by June 9, 2011, and imposed sanctions of $3,000. Mr. Humphrey failed to provide answers or documents by June 9, 2011. On June 30, 2011, the court ordered Mr. Humphrey to pay $2,700 in

2

sanctions and $1,000 in attorney fees for failing to comply with the May 23, 2011 discovery order.

The delays continued. Throughout the summer of 2011, Mr. Humphrey failed to comply with discovery orders. On August 16, 2011, he was found in contempt and ordered to hire an appraiser to inventory and value all the property at his home by September 22, 2011. Following a contempt hearing on September 22, 2011, the court again ordered Mr. Humphrey to hire an appraiser and warned him that failure to do so would result in the striking of his pleadings and an order of default. On October 19, 2011, a court commissioner found Mr. Humphrey in contempt, noting he "failed to comply with all the purge conditions outlined in the September 22, 2011 order on show cause contempt." Clerk's Papers (CP) at 329. The order disallowed Mr. Humphrey from providing values on his personal property at the time of trial, ordered him to provide a list of his firearms, and allowed Ms. Humphrey on his property to inventory personal property.

On the first day of trial, Ms. Humphrey filed a CR 37(b) motion to strike all of Mr. Humphrey's pleadings and to find him in default. Ms. Humphrey argued that Mr. Humphrey's failure to comply with discovery orders was willful and prejudiced her ability to present evidence at trial, particularly evidence related to the value of a gun

3

collection. The court deferred a decision, finding an insufficient showing of prejudice at that juncture. The court noted that Mr. Humphrey's dilatory response to discovery requests, although willful, was not substantially prejudicial because the value of most of the property at issue was a matter of public record. The court noted there was some prejudice to Ms. Humphrey regarding some cash and vehicles, but stated, "I'm going to defer that ruling until I've looked more closely at this." Report of Proceedings (RP) at 32-33.

At the end of trial, the court revisited Ms. Humphrey's motion for default. It noted that Mr. Humphrey had ultimately complied with most of the discovery requests, including the provision of financial records and a walk-through of Mr. Humphrey's property. The court ultimately denied the motion, finding in part that without a "sum certain," default was "simply not available to me as a practical matter." RP at 593. The judge also noted that Mr. Humphrey's intransigence had been addressed by previous awards of attorney fees and sanctions. However, the court acknowledged that "the discovery phase was strung out, complicated, made more difficult than it had to be," and therefore awarded an additional $10,000 in attorney fees to Ms. Humphrey. RP at 594-95.

4

The court awarded each party their separate property, including their respective homes, personal property, and awarded Mr. Humphrey $27,000 of the community real property and Ms. Humphrey $17,000 of the community real property. This disparity was offset by a community property equalization payment to Ms. Humphrey of $10,700. Bank accounts were divided equally. The court also awarded Ms. Humphrey $40,000 for her interest in a gun collection, the balance of previously imposed attorney fees and sanctions, $900 and $6,050, respectively. Mr. Humphrey was ordered to pay Ms. Humphrey monthly maintenance of $800 through Mr. Humphrey's lifetime.

Ms. Humphrey appeals.

## ANALYSIS

*Discovery Sanction.* Ms. Humphrey first argues that the trial court abused its discretion in denying her CR 37(b) motion for a default judgment. She contends "[t]he trial court erroneously based [its] decision to deny the request for a default as a sanction under CR 37 because there was not a sum certain and as such the court determined that default was 'simply not available to me as a practical matter.'" Br. of Appellant at 17 (quoting RP at 593). Ms. Humphrey asserts the court could have addressed this concern by conducting an evidentiary hearing under CR 55(b)(2), which gives the court discretion to conduct a hearing when the amount of judgment is uncertain after entry of a default

order.

Default judgments are not favored in the law. *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 581, 599 P.2d 1289 (1979). The overriding policy is that controversies should be determined on their merits, not by default. *Id.* (quoting *Dlouhy v. Dlouhy*, 55 Wn.2d 718, 721, 349 P.2d 1073 (1960)).

Under CR 37(b), entry of a default judgment may be a valid sanction for a discovery violation. CR 37(b), (d); *Smith v. Behr Process Corp.*, 113 Wn. App. 306, 324, 54 P.3d 665 (2002). A court may make "such orders in regard to the failure as are just," including excluding evidence to rendering a judgment by default. CR 37(b)(2); *see Magana v. Hyundai Motor Am.*, 167 Wn.2d 570, 583-84, 220 P.3d 191 (2009). When a trial court imposes default in a proceeding as a sanction for violation of a discovery order, it must consider whether: (1) the party's refusal to obey the discovery order was willful or deliberate, (2) the violation substantially prejudiced the moving party's ability to prepare for trial, and (3) a lesser sanction would be sufficient. *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997); *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 688, 690, 132 P.3d 115 (2006).

We review a court's decision regarding discovery sanctions for an abuse of discretion. *Magana*, 167 Wn.2d at 582. A trial court has broad discretion in deciding

whether to impose sanctions, including an order of default, and its determination will not be disturbed absent a clear abuse of that discretion. *Graham v. Yakima Stock Brokers, Inc.*, 192 Wash. 121, 126, 72 P.2d 1041 (1937). This standard "gives the trial court wide latitude in determining appropriate sanctions, reduces trial court reluctance to impose sanctions, and recognizes that the trial court is in a better position to determine this issue." *Smith*, 113 Wn. App. at 324.

In its oral ruling, the trial court noted there was no sum certain and therefore default was not a "practical" sanction. RP at 593. It also refused to strike exhibits, pointing out the case suffered from "lack of evidence, not too much. So I want to keep what has been put together." RP at 593. The court evaluated the *Burnet* factors and concluded that although Mr. Humphrey's intransigence during discovery was willful, Ms. Humphrey was not substantially prejudiced (apart from evaluating the value of the firearms), and that alternative sanctions were appropriate. In concluding that lesser sanctions sufficed, the court found Mr. Humphrey had been sanctioned with attorney fees and financial sanctions as follows:

> Attorney's fees were ordered by the Court to be paid for the wife by the husband as follows: February 23, 2011, $600; May 23, 2011, $300; and July 1, 2011, $1000 (paid from husband's account) leaving $900 due. Sanctions were imposed against the husband as follows: $3,000 on May 23, 2011; $2,700 on June 30, 2011 (paid from husband's account); $2,500 on August 6, 2011; and $800 on September 22, 2011, leaving $6,050 due.

7

CP at 463 (emphasis in original). The court also imposed an additional $10,000 in attorney fees due to Mr. Humphrey's intransigence during discovery.

In evaluating the court's use of its broad discretion here, we reiterate that default is a severe sanction to be employed only when it is apparent a lesser sanction will not suffice and the disobedient party's conduct has been willful and substantially prejudiced the opponent's ability to prepare for trial. *Burnet*, 131 Wn.2d at 494. Here, the lesser sanctions advanced the purpose of discovery, compensated Ms. Humphrey for the discovery failings, and allowed the trial to go forward on the merits.

Although Mr. Humphrey needlessly extended the discovery process, Ms. Humphrey was not substantially prejudiced. On appeal, she contends the trial court should have entered a default judgment and then employed a CR 55(b)(2)[1] evidentiary hearing to obtain sufficient information to divide the property. However, an evidentiary hearing was not needed here. During trial, Mr. Humphrey provided information regarding his income, the value and acquisition dates of certain parcels of real property, and the amount of money in bank accounts. The court noted that apart from difficulty in evaluating the value of a gun collection, it had sufficient information to divide the parties'

---

[1] CR 55(b)(2) provides in part: "If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages[,] the court may conduct such hearings as are deemed necessary."

8

real and personal property because much of the related information was also public record. Likewise, the amounts in the parties' bank accounts were fully disclosed by trial and the court was able to divide them equally. In view of this record, Ms. Humphrey fails to show that the court abused its broad discretion in refusing to employ the most severe of sanctions. The trial court did not abuse its discretion in denying Ms. Humphrey's motion for a default judgment.

*Alleged Concealment of Assets.* Ms. Humphrey next contends that the trial court erred in finding that Mr. Humphrey had not concealed approximately $210,000 recovered from a safe in his residence and that the money was traceable to recent withdrawals from community bank accounts. She contends the evidence at trial indicated that Mr. Humphrey was hiding money, including his own testimony in which he admitted to hiding assets and intending to bury money.

We review the trial court's findings of fact in a dissolution action for substantial evidence. *In re Marriage of Wilson*, 165 Wn. App. 333, 340, 267 P.3d 485 (2011). Substantial evidence is a sufficient quantity of evidence to persuade a fair-minded, rational person that the finding is true. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242, 170 P.3d 572 (2007) (quoting *In re Marriage of Griswold*, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002)). This court defers to the fact finder on witness credibility and the

persuasiveness of the evidence. *In re Marriage of Akon*, 160 Wn. App. 48, 57, 248 P.3d 94 (2011). Furthermore, we review the record in the light most favorable to the party in whose favor the finding is entered. *In re Marriage of Gillespie*, 89 Wn. App. 390, 404, 948 P.2d 1338 (1997).

In its oral ruling, the court rejected Ms. Humphrey's claim that Mr. Humphrey was hiding $127,000 to $130,000 in his safe, noting that Mr. Humphrey had withdrawn $210,000 from two bank accounts shortly before $214,000 was found in Mr. Humphrey's safe. The court concluded the evidence was insufficient to support Ms. Humphrey's claim that additional money was unaccounted for, stating, "the idea that the wife had seen $127,000 or $130,000 in the safe, you know, unless they sat down and counted it carefully, it's hard to know exactly how she would have known those values. . . . But there's nothing in any of the bank records that shows there's anything over and above what's either in the bank or the trust account that was recovered by Mr. Webster." RP at 612-13.

The court's written finding states:

The husband has not concealed any additional cash. The wife believes an additional $127,000 to $130,000 is not accounted for—was concealed by Mr. Humphrey. But the couple's clear practice was to place their liquid assets in financial institutions. . . . No records have been located to support the existence of such concealed money, even though the financial records have been fully investigated. The Washington Mutual records from 2003 to

10

2007 do not show any additional larger sums of money.

CP at 469-70.

Substantial evidence supports this finding. At trial, Thomas Webster testified that he went to Mr. Humphrey's home to inventory items of property and saw Mr. Humphrey trying to hide a safe. Upon a search of the home, Mr. Webster recovered the safe and removed $214,000 from it. Mr. Webster gave Mr. Humphrey about $10,000 and put the remaining amount in a trust account. The evidence also shows that about one week before the money was removed, Mr. Humphrey had withdrawn $210,000 from two bank accounts. The record does not point to any other source of the money, and Ms. Humphrey cannot point to an alternative source.

It is a logical inference from this evidence that the money removed from the safe is the money that Mr. Humphrey withdrew from the two accounts. The court reviewed all of the financial and bank records and could find no other source to support the existence of the alleged concealed money. Ample evidence supports the court's finding that the $214,000 found in Mr. Humphrey's safe was traceable to Mr. Humphrey's recent withdrawal of $210,000 from two bank accounts. We, therefore, uphold the finding.

*Valuation of Gun Collection.* Ms. Humphrey contends that "the court erred by finding that the community guns had a value of $40,000.00 because the evidence presented at court does not support the court['s] findings." Br. of Appellant at 23. Ms. Humphrey maintains that the trial court mistakenly determined the value of the guns based on Mr. Humphrey's testimony that he gave the guns to his grandson, who, in turn, sold them for approximately $40,000.

Ms. Humphrey misstates the court's finding. The court did not assess the value of the gun collection at $40,000. Instead, it ordered Mr. Humphrey to pay Ms. Humphrey $40,000 for *her* interest in the collection. In doing so, the court noted the difficulty in putting a value on the gun collection and characterizing it as separate or community property due to insufficient evidence in the record. It found:

> At one time the husband owned a firearms collection consisting of some 100 firearms, many of which were muzzle loaders and black powder—some were antiques. No evidence was introduced at trial to identify specific firearms or showing when they were acquired. They were collected over several years. As of April, 2011, only two pistols could be located from the collection . . . . The husband testified he gave the collection to his grandson who, in turn, sold the collection for approximately $40,000. The wife testified she saw the collection in 2009 when the husband had it displayed in their Airstream trailer. She testified that the husband had claimed that collection was worth about $100,000.

CP at 468-69.

12

The court found that Mr. Humphrey's lack of compliance with discovery orders made it impossible to determine what became of the collection, its value, or whether to characterize it as community or separate property. It noted that his failure to provide adequate information about the value of the collection substantially prejudiced Ms. Humphrey in her preparation for trial. The court considered financial sanctions and limitations on his evidence, but decided to award Ms. Humphrey a "meaningful" award, concluding, "The best conservative value of the wife's interest in the firearm collection is $40,000." CP at 471, 469.

Ms. Humphrey fails to show the court abused its broad discretion in awarding her a $40,000 interest in the gun collection. Contrary to her contention, it did not value the gun collection at $40,000. It simply calculated the value of *her* interest based on Ms. Humphrey's testimony that Mr. Humphrey estimated the collection to be worth about $100,000.

*Spousal Maintenance.* We next address Ms. Humphrey's contention that the amount of maintenance the court awarded her, $800 per month, was unfair because it leaves Mr. Humphrey with significantly more monthly income.

Initially, we note that the trial court's decisions in a dissolution proceeding will seldom be changed on appeal. *In re Marriage of Griffin*, 114 Wn.2d 772, 776, 791 P.2d

13

519 (1990). It is within the court's discretion to order maintenance in an amount and for a period of time the court deems just. RCW 26.09.090(1). Accordingly, we review the trial court's decisions regarding maintenance to determine whether they are manifestly unreasonable or based on untenable grounds. *In re Marriage of Zahm*, 138 Wn.2d 213, 226, 978 P.2d 498 (1999); *Gillespie*, 89 Wn. App. at 398-99. We will not retry facts on appeal, and we accept findings of fact as verities on appeal if they are supported by substantial evidence. *In re Marriage of Thomas*, 63 Wn. App. 658, 660, 821 P.2d 1227 (1991).

In determining maintenance, the court considers several factors, including the postdissolution financial resources of the parties; the parties' abilities to meet their needs independently; the duration of the marriage; the standard of living established during the marriage; the parties' ages, health, and financial obligations; and the ability of one spouse to pay maintenance to the other. RCW 26.09.090(1). The court's primary concern in awarding maintenance is the economic condition in which the decree leaves the parties. *In re Marriage of Washburn*, 101 Wn.2d 168, 181, 677 P.2d 152 (1984).

Ms. Humphrey argues that the court's award of maintenance is unfair because Mr. Humphrey ends up with more monthly income compared to her. However, her accounting overlooks the fact that Mr. Humphrey's expenses are higher. The trial court

14

noted Mr. Humphrey has monthly expenses of $2,700, compared to Ms. Humphrey's expenses of about $1,400.

In addition to accounting for the difference in monthly living expenses, the trial court reviewed the appropriate statutory factors and entered detailed findings, noting the length of the marriage was "mid-term," neither party was employable, and that Ms. Humphrey was significantly younger than Mr. Humphrey with many years ahead of her in which she would need support. The court also noted the considerable disparity in the parties' monthly income, that both are in poor health, Mr. Humphrey is retired, and that Ms. Humphrey was found to be totally disabled in 2000. The court's written findings state in part:

> L.     The husband receives monthly income of $706 from Social Security and $2,823 from a 100% VA disability pension—due to PTSD, a hearing impairment, and loss of motion in two fingers. The wife, in turn, receives $617 from Social Security.
> M.     They have been married for 19 years, and cohabitating for at least 25 years. Post-dissolution they will each have full ownership of a residence, considerable items of personal property, and cash holdings. They each are careful with money and they each have a modest lifestyle.
> N.     The husband's monthly income is $3,529 while his monthly expenses are presently about $2,700, which includes monthly debts of only $300. The wife's income is only $617, but with $800 in spousal maintenance, will amount to $1,417 per month with monthly expenses set at about $1,400 which includes only $200 in credit card and other monthly debts. The amount of monthly spousal support is set at $800 per month.

CP at 482-83.

15

The court concluded:

> Post-dissolution the parties will have comparable assets or resources. Mrs. Humphrey will have her home in Colville, Mr. Humphrey his home in Boyds. They will each have considerable liquid assets—due to sanctions and attorney fees, Mrs. Humphrey more than Mr. Humphrey. Neither spouse will be able to work, given their disabilities and ages. But each has Social Security and Mr. Humphrey [has] a VA pension which will allow him to pay some spousal support. Theirs was a 17-year marriage and 23 year cohabitation. In the end, they have similar needs and Mr. Humphrey the greater ability to pay.

CP at 488.

The court considered the statutory factors and determined $800 per month a just amount of maintenance. The trial court's analysis was not unreasonable or based on untenable grounds. Accordingly, we affirm.

*Revocation of Pretrial Order.* Finally, Ms. Humphrey contends the trial court erred in reconsidering and revoking a pretrial order. She contends the agreement was a settlement offer and, therefore, should be evaluated under CR 2A[2] and principles of contract law. She argues, "In this case the parties have reduced their agreement to a writing and it is absolutely enforceable as a result." Br. of Appellant at 29. Mr.

---

[2] CR 2A provides:
No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purpose of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof

Humphrey responds that the trial court had the authority to revoke the order at issue because it was based on a misunderstanding by counsel and the court.

The record supports Mr. Humphrey's position. During pretrial discussions about the payment of sanctions, the parties agreed that if sanctions were paid from community funds, Mr. Humphrey would reimburse Ms. Humphrey from separate funds. This agreement was reflected in a June 30, 2011 temporary order that provided:

> Any and all sanctions, attorney fees and spousal maintenance payments paid with the community funds held in the Respondent's Attorney's trust account shall be deemed the Respondent's sole and separate debt obligation. Any and all amounts paid on the Respondent's sole and separate debt obligation shall be reimbursed in full to the Petitioner at the time of trial. Both parties and the court shall be bound to grant the Petitioner full reimbursement of the community funds used to pay the Respondent's separate debt obligations.

CP at 297.

In a June 28, 2011 letter from Ms. Humphrey's attorney to Mr. Humphrey's attorney, the order's language is explained:

> "This agreement reflects our agreement from Monday. I have also included language that allows that sanctions and fees be paid from the funds held in trust. As a condition of Ms. Humphrey's agreement to allow the use of the community funds, I have added language that binds the Court to fully reimburse Ms. Humphrey for these funds expended for Mr. Humphrey's sole and separate obligations."

---

shall be in writing and subscribed by the attorneys denying the same.

CP at 625.

Paragraph 3.15 of the final divorce decree provided: "The husband shall pay the wife $49,300 as reimbursement for community funds used for the husband's separate liabilities per court order filed June 30, 2011. These fees shall be paid from the husband's portion of community funds." CP at 477.

Ms. Humphrey subsequently moved for reconsideration of this provision, arguing, "[t]he purpose and intent of the language in the June 30, 2011 order was to reimburse the community funds for division at trial for the husband's separate property payments being paid from the trust while this case was awaiting trial and was not specifically meant to be paid to wife, effectively paying her the same amount twice." CP at 529. Ms. Humphrey further explained that the parties agreed that payment for the sanctions would be made from Mr. Humphrey's attorney's trust account so that the community estate would not be harmed.

At the hearing on the motion, Mr. Humphrey's attorney explained that the effect of the language in the June 30, 2011 order was to require Mr. Humphrey to pay an additional $47,000: "I thought that that was—that order was just simply a reflection of what we'd already agreed to, and that it certainly would be recognized as coming out of his share— not an additional $47,000 of moneys that he's already paid her." RP at 625. Mr.

Humphrey's attorney contended that awarding Ms. Humphrey the $47,000 would amount to "double dipping" because he had already paid the sanctions from his separate share of community funds.

The trial court agreed that there had been a misunderstanding. It stated that it had not understood the terms of the June 30, 2011 order and had not reviewed the June 28, 2011 letter. It explained that it understood that Ms. Humphrey's position was that payment of the sanctions and Ms. Humphrey's attorney fees would not come from community funds, but from Mr. Humphrey's share of community funds and "[t]hese payments ordered by the Court have been made from the husband's interest in the community property." CP at 625. The court granted Ms. Humphrey's motion to reconsider and cancelled the reimbursement of the $49,300 in the dissolution decree. In doing so, it concluded:

> The husband has been sanctioned for his refusal to timely pay spousal support and non-compliance with discovery. . . . Additional reimbursements by the husband, beyond reimbursement of the wife's community interest resulting from his payment of spousal support, sanctions and attorney fees from the community funds, would work an injustice. A lesser reimbursement to the wife, in view of the overall division of assets, would not be to her disadvantage. And, *if the pretrial agreement and order had been understood at the time of the oral ruling and entry of the decree, the division of property would have been adjusted to reach the same overall division of property.*

CP at 626 (emphasis added).

19

There was no error. Although stipulations are generally binding on the parties, "[a] trial court has discretion to relieve a party from a stipulation when it is shown that relief is necessary to prevent injustice and the granting of the relief will not place the adverse party at a disadvantage by having acted in reliance upon the stipulation." *Baird v. Baird*, 6 Wn. App. 587, 590, 494 P.2d 1387 (1972). Moreover, we review a judgment by consent or stipulation if there is evidence of fraud, mistake, misunderstanding, or lack of jurisdiction. *Id.* at 589.

Here, the court found that ordering Mr. Humphrey to pay an additional $49,000 would be unfair, given that he had already paid sanctions and attorney fees from his share of the community property. The court was well within its discretion in doing so. Moreover, the record reflects that the order was based on a misunderstanding of the court and counsel. This provides another tenable basis for the court's cancellation of the order. *Id.* at 589-90. The trial court did not abuse its discretion in revoking the pretrial order.

*Attorney Fees.* Citing RAP 14.2 and RAP 18.1, Mr. Humphrey requests attorney fees and costs on appeal. In light of Mr. Humphrey's intransigence throughout discovery, we deny his request for attorney fees and costs.

No. 31336-1-III
*In re Marriage of Humphrey*

Affirm.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____    _____
Brown, J.                              Siddoway, C.J.

21