# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

PAUL THOMAS CREWS, as personal )
representative of the ESTATE OF )    No. 70756-6-I
BRENDA HOUSTON, and as personal )
representative of the ESTATE OF )    DIVISION ONE
ELIZABETH CREWS, and in his individual )
capacity, )    UNPUBLISHED OPINION
)
Respondent, )
)
v. )
)
AVCO CORPORATION, )
)
Appellant, )
)
PRECISION AIRMOTIVE LLC; )
FORWARD TECHNOLOGIES )
INDUSTRIES, INC.; CREST AIRPARK, )
INC.; and AUBURN FLIGHT SERVICES, )
INC., )
)
Defendants. )    FILED: April 6, 2015
)

APPELWICK, J. — Avco appeals the trial court's order sanctioning it for discovery violations. The trial court struck all of Avco's affirmative defenses and deemed all allegations in Crews's complaint admitted. As a result, the court found liability and causation established and set separate trials on compensatory damages and punitive damages. Avco argues that the discovery sanctions order violated its right to due process. It further asserts that the trial court abused its discretion in imposing sanctions that were more severe than necessary. We remand for amendment of judgment to reflect offset of amounts Crews received from other defendants. We otherwise affirm.

## FACTS

On July 27, 2008, a rented Cessna 172N plane crashed in the Cascades near McMurray, Washington. The accident killed the pilot, Brenda Houston, and her two passengers: Houston's 10 year old daughter, Elizabeth Crews, and their family friend, Dr. Virgil Becker.

On September 10, 2008, Houston's husband, Paul Crews, sued for injuries and wrongful death. Crews named multiple defendants involved in the manufacture and care of the plane. The personal representative of Becker's estate also brought suit against the same defendants and named Houston's estate as an additional defendant, claiming pilot negligence. The plaintiffs alleged that engine failure, in particular a faulty carburetor, caused the plane crash. The defendants included Avco Corporation, which manufactured and sold the plane's engine in 1978,[1] and Precision Airmotive Corporation, which installed a new carburetor float in the engine in 1999.

Precision developed the float pursuant to its parts manufacturer approval (PMA) from the Federal Aviation Administration (FAA). With a PMA, vendors of airplane parts can sell replacement parts directly to customers and service shops. Precision acquired a PMA to supply carburetors for Avco. The PMA required Precision to manufacture the carburetors according to Avco's preapproved engineering drawings and specifications. In the 1990s, Precision designed a new float made of a polymer resin called Delrin. Precision obtained permission from Avco to use the Delrin float, and the FAA approved the float.

---

[1] The engine was manufactured by Avco's unincorporated division, Lycoming Engines. Because Avco is the named party in the lawsuit, we refer to Avco and Lycoming together as "Avco" to maintain clarity and consistency.

Crews and Becker alleged that the Delrin floats were defective and that a faulty Delrin float was responsible for the plane crash. They further alleged that Avco and its codefendants were aware the floats were defective but withheld this information and failed to warn about the defects. The plaintiffs asserted claims for strict liability, negligence, and breach of warranty. They sought both general and punitive damages.

Avco asserted several affirmative defenses, including a lack of involvement with the carburetor or float, compliance with federal regulations, federal and state statutes of repose, comparative fault, the unavailability of punitive damages, and a demand for offset of amounts recovered from other liable parties. Avco also counterclaimed against Houston's estate, alleging that pilot error caused the crash.

In October 2010, Crews and Becker jointly served their first requests for production on Avco. The requests generally pertained to the carburetors and Delrin floats, their design and manufacture, Avco's communication with the FAA and with other companies about the carburetors and floats, and information about any known defects or malfunctions. Avco did not produce any discovery at that time. It objected to 68 of the 73 requests. It stated that it would produce the remaining documents with its answers and affirmative defenses.

Crews's and Becker's cases were consolidated on January 31, 2011.

On April 29, Becker served his first interrogatories and second requests for production on Avco. Avco objected to 16 of the 17 interrogatories. It also objected to 27 of the 30 requests for production. As to the remaining three, Avco stated that responsive documents had already been provided.

On July 6, Becker moved to compel Avco to answer his first interrogatories and respond to his second requests for production. On July 7, the plaintiffs jointly moved to compel production of documents responsive to their requests. Avco opposed both motions. In his reply, Becker asserted that Avco withheld documents reflecting its role in testing, reviewing, approving, and certifying the Delrin float. As support, Becker attached a December 2005 series of e-mails between Avco and Precision employees reflecting Avco's knowledge of defects in the Delrin floats. Becker had obtained the e-mails from Precision's discovery production. The subject line of the e-mails was "Plastic Float Leaking – Concerns." An Avco employee wrote that, "[p]er the attached file and our previous conversations, it is clear that the hollow plastic carb floats can leak, allowing fuel to enter the interior of the floats. [Avco] is concerned that this condition will lead to functional issues on engine installa[t]ions." The attached file was not included. A Precision employee replied, "We have been monitoring the situation with leaking Delrin floats since their incorporation into production. We have, on several instances discussed the situation with personnel at [Avco]."

On July 21, Judge Julie Spector granted Becker's motion and the joint motion to compel. Judge Spector ordered Avco to respond to Becker's requests within 14 days and the plaintiffs' joint requests within five days. She further ordered Avco to specifically

identify by Bates stamp number each document that was responsive to each interrogatory or request. She also provided that the plaintiffs could seek costs for bringing the motions.

On August 4, Avco amended its responses to the plaintiffs' first requests for production and Becker's first interrogatories and second requests for production. Avco's responses generally indicated that "[r]esponsive documents have either been produced and/or are being made available for inspection" or that "Avco has located no documents responsive to this request." (Emphasis omitted.)

On August 31, Becker moved to hold Avco in contempt for failing to comply with the order to compel. He requested that the court impose sanctions, including striking Avco's federal statute of repose defense, holding that Avco may not oppose the availability of punitive damages in this case, holding that Avco had a duty to warn owners and operators about the defective float, and monetary sanctions. On September 2, the plaintiffs also jointly moved to hold Avco in contempt and to impose sanctions.

On September 27, Judge Spector granted both contempt motions, finding that Avco's "willful violation of the Court's July 20, 2011 Order has prejudiced and continues to prejudice the plaintiffs in their prosecution of the case." She ordered Avco to fully comply within seven days. She further ordered Avco to submit an affidavit detailing all efforts made to fully comply with the order, "including, as for each ordered request, a statement as to whether full and complete production has been made, and a detailed description of how documents were identified and located." Judge Spector again provided that the plaintiffs could seek costs and fees for bringing the motions. She reserved ruling on three sanctions: striking Avco's federal statute of repose defense;

ordering that Avco may not oppose punitive damages; and ordering that Avco had a duty to warn about the defective floats.

Avco submitted a declaration from counsel detailing Avco's efforts to comply with Judge Spector's orders. Counsel stated that, pursuant to company policy, "certain categories of documents (such as engineering documents and regulatory correspondence) are kept into perpetuity whereas other categories of documents are not required to be retained on a permanent basis but are retained only for fixed periods of time, depending upon the category of document." Counsel's affidavit further explained that many of the documents supplied by Precision regarding carburetors were "beyond the various retention periods in [Avco's] Records Management Policy." The records management policy was not attached to the declaration.

On October 10, Avco moved to amend or vacate the contempt orders. It argued that it made good faith efforts to comply with the plaintiffs' broad discovery requests and that it had timely submitted the declaration of compliance as required by the court's order. Avco also proposed that the subject matter of the orders be transferred to retired Judge Paris Kallas, who had been appointed special discovery master the prior month.

On November 8, Judge Spector denied Avco's motion. She declined to impose further sanctions at that time.

Effective January 9, 2012, the case was transferred to Judge Monica Benton.

On January 20, Becker served Avco with his second interrogatories and third requests for production. Avco responded on February 24. Again, Avco objected to many of the requests or stated that it had no responsive documents.

On May 25, Becker brought a motion before Discovery Master Kallas to compel Avco to fully answer the second interrogatories and third requests for production. On June 12, Discovery Master Kallas granted Becker's motion in part and ordered Avco to produce certain discovery. She rejected Becker's argument that Avco's responses were evasive, instead finding that Avco explicitly represented that its responses were complete and compliant. She further stated that Avco was held to its representations and its duty to reasonably supplement its responses.

On September 4 and 5, Becker and Crews amended their complaints to add federal causes of action.

On September 28, the plaintiffs jointly moved for a default judgment against Avco for its failure to comply with Judge Spector's discovery and contempt orders. The plaintiffs explained that they sought discovery about Avco's role in approving the Delrin float, knowledge about the defective floats, and failure to notify the FAA or aircraft operators and owners about the defect. The plaintiffs identified several examples of documents that Avco failed to produce, including the 2005 e-mails with Precision about the Delrin float leaking problems. The plaintiffs asserted that Avco's noncompliance put them at a "serious disadvantage trying to prepare for trial without the benefit of critical facts going to the heart of their case against [Avco] and other defendants." The plaintiffs requested that the court deem all allegations of the plaintiffs' complaints admitted and order Avco in default thereof, or, in the alternative, strike Avco's affirmative defenses, hold that the punitive damages elements against Avco had been met, and hold that Avco breached its duty to warn.

Avco responded on October 4. It did not assert that it had provided the allegedly withheld documents. However, it maintained that it had responded to all the plaintiffs' discovery requests and had produced documents or made documents available for inspection. It also explained that, under its records management policy, many of the documents that Precision produced were no longer in Avco's possession.

In the plaintiffs' October 5 reply, they noted that Avco failed to submit any employee affidavit stating that no responsive documents existed or that certain evidence was destroyed under the records management policy. Instead, they observed, Avco "wholly relies on [its attorney's] declaration, which Judge Spector rejected."

On February 4, 2013, the first day of trial, Judge Benton held oral argument on the plaintiffs' motion for default. At oral argument, Avco's counsel produced a copy of the records management policy for Judge Benton. Counsel acknowledged that Judge Spector was not provided a copy of the policy and was only informed about the policy via counsel's declaration. Judge Benton found that it was unclear whether the policy extended to the documents requested by the plaintiffs. She stated that she was "not satisfied . . . that some of the documents requested by the plaintiff couldn't have been produced." She orally granted the plaintiffs' motion to sanction Avco.

On February 5, Judge Benton entered a written order granting the plaintiffs' motion. The order stated that there was substantial evidence that Avco did not comply with the plaintiffs' discovery requests, listing "[a]s one example" the 2005 e-mail chain with Precision. The court found that the withheld discovery tied directly to the plaintiffs' burden of proof regarding Avco's violation of federal regulations and punitive damages. The order further stated that Avco's justification for nonproduction was insufficient: "The Court

examined the [records management policy], which was provided without affidavit or declaration and here finds the categories within it, combined with counsel's assignment of documents to the categories within it, to be overly vague." (Emphasis omitted.). The court found that Avco's "continued disregard and violation of the discovery and contempt orders is without reasonable excuse and is willful. [Avco] has and continues to substantially prejudice plaintiffs' preparation for trial and presentation at trial, on issues of liability, causation, and punitive damages." (Emphasis omitted.) It concluded that the only sanction that suffices is as follows: "All of each plaintiff's allegations in their respective operative Complaints against [Avco] are deemed admitted, and all of [Avco's] defenses, if any, are stricken." The court established liability and causation in favor of the plaintiffs and left to the jury the amount of compensatory and punitive damages to be awarded.

The jury considered compensatory damages and punitive damages in two separate phases of trial. It returned a verdict for Crews[2] of $17,283,000: $11,283,000 in compensatory damages and $6,000,000 in punitive damages.

Avco appeals.[3]

## DISCUSSION

Avco challenges the trial court's discovery sanctions order on multiple grounds. Avco first argues that the order violated due process, because Avco had no notice that it was in continuing violation of previous discovery orders. Avco further contends that the

---

[2] After the compensatory damages phase of the trial, Avco settled with Becker. At the punitive damages phase, the parties presented evidence regarding only Crews's claims. After trial concluded, Crews's and Becker's cases were deconsolidated.

[3] Avco moved to include summaries and timelines as appendices to its opening brief. There was no objection to the motion. The motion is granted.

trial court abused its discretion in imposing the most severe sanctions possible when lesser sanctions would have sufficed. Avco also challenges specific sanctions, asserting that the trial court erred in striking Avco's federal defenses, imposing punitive damages, and denying an offset of amounts Crews received from other defendants.

I. Due Process

Avco characterizes the discovery sanctions order as a violation of its right to due process. Due process is satisfied if, before entering a default judgment or dismissing a claim or defense, the trial court concludes that there was a willful or deliberate refusal to obey a discovery order and that the refusal substantially prejudiced the opponent's ability to prepare for trial. Magaña v. Hyundai Motor Am., 167 Wn.2d 570, 591, 220 P.3d 191 (2009).

Here, Judge Spector concluded that Avco willfully violated her discovery orders and that its willful violation prejudiced the plaintiffs in their prosecution of the case. Accordingly, Judge Spector held Avco in contempt. She denied Avco's motion to amend or vacate the contempt orders. At no point did any judge enter an order finding that the contempt was purged.

Avco nonetheless asserts that it was unaware there would be further consequences for its failure to comply with Judge Spector's contempt orders. This is so, Avco argues, because Judge Spector and Discovery Master Kallas entered subsequent orders indicating that Avco's responses were adequate. Avco does not assert that these orders had preclusive effect on subsequent discovery decisions or estopped Crews from

arguing that Avco was in continuing violation. Avco merely asserts that, in light of the two orders, the discovery sanctions were an ambush.[4] We disagree.

First, Avco maintains that Judge Spector indicated that Avco was in compliance by declining the plaintiffs' proposal to impose more severe sanctions. But, this misrepresents the record. The fact that Judge Spector <u>reserved</u> ruling on the three harsher proposed sanctions put Avco on notice of the risk that the more severe sanctions could be imposed in the future for failure to comply. Judge Spector declined to impose those sanctions when ruling on Avco's motion to amend or vacate the contempt orders. But, she did not expressly revoke her reservation of them in her previous order. Merely declining to impose further sanctions did not indicate that Avco had purged contempt, evidenced by the fact that Judge Spector specifically denied Avco's motion to vacate the contempt orders.

Avco further alleges that Discovery Master Kallas confirmed that Avco's responses were adequate. Again, this mischaracterizes the record. The issue before Master Kallas was not whether Avco had purged its contempt. The issue was whether Avco was evasive in responding to Becker's second interrogatories and third requests for production. Becker had complained that, where Avco produced no responsive documents, it failed to affirmatively state that it had no documents to produce. Master Kallas stated that Avco's counsel <u>represented</u> that its responses were complete and compliant. She did not determine that the responses were in fact complete, and she

---

[4] At oral argument, Avco also asserted that the trial court should have held an evidentiary hearing before imposing sanctions. But, Avco did not request an evidentiary hearing in its response to the motion for default or at any other time on this record.

11

further noted Avco's duty to supplement. Nothing in these orders provides that Avco's early contempt had been purged or that the reserved sanctions had been lifted.

In the 2011 contempt orders, Judge Spector made the requisite findings to satisfy due process. Her orders clearly put Avco on notice that she was reserving additional sanctions and identified what those sanctions were. The plaintiffs' motion for default put Avco on notice that its compliance with the contempt orders was still in question. Avco then had more than four months before the sanctions hearing, during which it could have complied with the orders or prepared a defense. Neither the discovery sanctions procedure nor the order violated Avco's right to due process.

II. Discovery Sanctions

Avco argues that the trial court erred in imposing a "death penalty order" that was more severe than necessary to cure any prejudice. If a party fails to obey a discovery order, the trial court may "make such orders in regard to the failure as are just." CR 37(b)(2). The trial court has broad discretion as to the choice of sanctions for violation of a discovery order. Burnet v. Spokane Ambulance, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997). We will not disturb its ruling on appeal absent a clear showing of abuse of discretion. Id.

Discovery sanctions serve to deter, punish, compensate, educate, and ensure that the wrongdoer does not profit from the wrong. Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 356, 858 P.2d 1054 (1993). The trial court should impose the least severe sanction that is adequate to serve the sanction's particular purpose but is not so minimal as to undermine the purpose of discovery. Id. at 355-56.

12

CR 37(b) presents a nonexclusive list of possible sanctions, including designating facts as established, striking claims or defenses, limiting or prohibiting evidence, default, and contempt. If a trial court imposes one of the harsher remedies under CR 37(b), the record must clearly show that (1) one party willfully or deliberately violated the discovery rules and orders, (2) the opposing party was substantially prejudiced in its ability to prepare for trial, and (3) the trial court explicitly considered whether a lesser sanction would have sufficed. Magaña, 167 Wn.2d at 584. We can disturb a trial court's sanction only if it is clearly unsupported by the record. Id. at 583.

Here, the trial court made the three required findings on the record. Thus, our focus is whether the record supports those findings.

A.    Willful Violation

A party's disregard of a court order without reasonable excuse is deemed willful. Rivers v. Wash. State Conference of Mason Contractors, 145 Wn.2d 674, 686-87, 41 P.3d 1175 (2002). Here, the trial court found that Avco's "discovery violations were willful as found by Judge Spector and have continued to be willful since her ruling has not been complied with. . . . Further the court finds that [Avco] has not presented a reasonable excuse or justification for its non-compliance." (Emphasis omitted.) This finding is supported by the record.

The plaintiffs repeatedly requested information about Avco's involvement with the Delrin floats and knowledge that they were problematic. Avco did not provide the requested discovery, despite being ordered to produce and subsequently being held in contempt for failing to do so. Avco claimed that, under its records management policy, it

13

was not required to keep all the documents that the plaintiffs sought. As a result, Avco asserted, its failure to produce the records was not willful.

Avco did not produce or prove the policy at the original contempt hearing before Judge Spector. Instead, it submitted an attorney declaration stating that the policy governs the retention of "various categories of documents, including intra-company and inter-company correspondence." Counsel further stated that

> [t]he discovery served by plaintiffs seeks information and documents dating back many decades, much of which is not [sic] longer maintained in company records by virtue of the Records Management Policy and by attrition given the passage of time and the retirement or deaths of persons employed by [Avco] over the years.

The declaration did not specify the discovery requests or types of documents to which the policy applied.

Avco did not provide the actual policy to the court for another 16 months, when it presented a copy of the policy for Judge Benton to review at the sanctions hearing. Counsel again stated that the policy "has retention periods for various categories of documents." As an example, counsel pointed out that the 2005 e-mails would not have been maintained past a certain number of years.[5] Judge Benton examined the policy and found that it was "vague in many ways . . . . I'm not satisfied, looking at the exhibits provided today, that some of the documents requested by the plaintiff couldn't have been produced."

---

[5] The records management policy was protected by a pretrial stipulation. Counsel did not state on the record the number of years that correspondence would be retained and instead pointed the trial court to the relevant portion of the written policy.

14

The records management policy is not part of the record on appeal,[6] so we are unable to independently review its language. On the record before us, however, it was not an abuse of discretion to reject the policy as an excuse for nonproduction. The scope and operation of the policy is unclear and unsupported. Avco's attorney declarations and pleadings do not explain how the policy applies to the "various categories" of documents requested. Avco did not submit any other evidence, such as employee affidavits, about how the policy applied to the requested documents and their destruction. As the trial court noted, it would require a "leap of faith" to conclude that the policy covered the evidence in question here.

Avco also committed violations of the contempt order unrelated to its records management policy. It failed to comply with Judge Spector's order that it produce and identify by Bates stamp every document that was responsive to every interrogatory or request for production. Instead, Avco produced and referred to 694 pages of Bates stamped documents and "other business records."[7] The plaintiffs determined that nearly all of the Bates stamped documents were unrelated to the information sought. Avco also maintained that it made relevant documents available for inspection in Pennsylvania. But, when Becker's counsel went to Pennsylvania, no responsive documents were identified, let alone Bates numbered. Counsel was shown a room wherein he estimated that roughly

---

[6] The record on appeal contains nearly 18,000 pages of clerk's papers, our review of which did not reveal a copy of the records management policy. Neither party cites to the policy. Avco cites to its trial counsel's declarations, wherein counsel stated that the policy existed. But, the policy was not attached to those declarations. And, in Avco's final motion to the trial court, Avco stated that the policy was "provided" to the plaintiffs and "shown" to the court—not entered into the record.

[7] The "other business records" appear to be over 6,000 pages of Bates stamped documents that were not specifically identified.

60 boxes were assembled to be searched. He was not permitted to search them at that time. But, he observed that two of the files were labeled "Moffett," the name of an Avco employee and witness in the case. When counsel was later permitted to review the documents, he saw that some files—including the Moffett boxes—had been removed. He determined that the remaining files were unrelated to the discovery in this case. Judge Benton found that this was nonresponsive to Judge Spector's order and observed that there was a "pattern here."

Failure to comply was even evident with records admittedly in Avco's possession. The plaintiffs requested a copy of Avco's insurance policy covering their claims against Avco. Avco had not produced the insurance policy as of the day of trial. When Judge Benton asked counsel why it had not been produced, counsel identified no impediment preventing her from doing so. Instead, she responded that she made the policy "available for inspection" and that it was "sitting in my office."

Avco did not comply with the original contempt order. On this record, it was not an abuse for the court to conclude that Avco did not provide a reasonable excuse for its nonproduction. Therefore, the trial court did not abuse its discretion in finding that the violation of the discovery order was willful.

B.  Prejudice

The trial court found that Avco's "discovery violations caused the Plaintiffs substantial prejudice in conducting discovery of this case, in preparation for trial and for trial of this case." As a result of Avco's nonproduction, the court found that: (1) the plaintiffs were unable to properly depose Avco's liability lay and expert witnesses; (2) the plaintiffs did not have the requisite documents to present at trial; and (3) the prejudice

was even more pronounced due to Avco's continued contempt over more than 16 months. These findings are supported by the record.

In Magaña, the trial court likewise sanctioned a defendant for withholding requested discovery and hindering the plaintiff's ability to present crucial evidence at trial. See 167 Wn.2d at 581-82. Magaña was seriously injured in a car accident and sued the carmaker, Hyundai. Id. at 576-77. Magaña's theory was that there was a design defect in the car seat, and he sought discovery about other accidents involving that particular seat design. Id. at 577. Hyundai responded that there were no lawsuits or claims in connection with that design. Id. at 577-78. At trial, the jury found in favor of Magaña and awarded over $8 million in damages. Id. at 578. Hyundai appealed on an evidentiary issue and was awarded a retrial solely on the issue of liability. Id. at 578-79.

Prior to the second trial, Magaña requested updated discovery about accidents involving the particular seat design. Id. at 579. When Hyundai resisted, the trial court ordered production of all discovery involving consumer complaints and lawsuits involving allegations of seat back failure. Id. at 580. Hyundai then produced numerous documents related to seat back failure, including nine reports involving the same model of car in Magaña's accident. Id. at 580. As a sanction, the trial court imposed a default judgment against Hyundai. Id. at 581-82. The Washington Supreme Court affirmed. Id. at 593-94. Regarding the prejudice prong, the court noted that the sole remaining issue was Hyundai's liability, and Hyundai suppressed evidence relevant to Magaña's claims on that issue. Id. at 589.

Avco maintains that Crews was not prejudiced, because he obtained the sensitive e-mails from Precision. But, as Crews points out, he was not provided the attachment

17

referenced in the e-mails. Moreover, based on discovery obtained from Precision as well as deposition testimony from Avco's own employees, Crews asserted that Avco withheld multiple other pieces of relevant discovery: reports about Delrin float leaks, information about a previous Avco accident investigation involving the same model float, communication between Avco and the FAA regarding the floats, and information about weekly phone meetings between Precision and Avco about the leaking Delrin floats.

In Magaña, Hyundai produced incident reports 45-75 days prior to retrial. Id. at 579-80. Here the documents were not produced at all. Avco disputes the existence of the requested discovery. However, the e-mail chain with Precision clearly showed that some of the discovery sought had existed and would have demonstrated that Avco was aware of problems with the Delrin floats and had at least some degree of involvement with them. And, Crews offered evidence—based in part on Avco employee testimony— that more information was out there.

Here, as in Magaña, the withheld information goes straight to the plaintiff's theory of liability. The prejudice is at least as great as in Magaña.

The trial court did not abuse its discretion in finding that Avco's discovery violation prejudiced Crews's preparation for trial and presentation of his case.

C.   Lesser Sanctions

The trial court explicitly considered several lesser sanctions. At that time, trial was beginning, and it was too late to coerce compliance.

The trial court found that, although monetary damages could compensate Crews, they would not adequately punish, deter, or educate. This was reasonable. Judge

18

Spector had imposed monetary sanctions against Avco on three prior occasions[8] and Avco still did not comply with the discovery orders.

The court also found that limiting Avco's presentation of evidence would not alleviate the prejudice to Crews in his ability to meet his burden of proof. Avco's nonproduction hindered Crews's ability to properly depose witnesses and present evidence at trial, preventing him from establishing a case against Avco. Restricting Avco's evidence would not remedy this harm.

Instead, the court deemed all plaintiffs' claims admitted, struck all of Avco's defenses, and awarded punitive damages in an amount to be determined by the jury. The stricken defenses included lack of involvement with the carburetor or float, compliance with federal regulations, the federal statute of repose, comparative fault, the unavailability of punitive damages, and offset of amounts recovered from other defendants. In addition, Avco was prohibited from asserting pilot error. The court found that this served to

> advance the important due process goals of insuring fair trials for all parties[,] of punishing a party for violations of long standing court orders, of deterring other parties from acting as [Avco] has in this case, of educating the party litigants, bench, bar, and the public about the importance of complying with discovery obligations and court orders, and in compensating the parties who are prejudiced by this conduct.

The trial court made the required consideration of lesser sanctions on the record. We find that it did not abuse its discretion in rejecting the claim that lesser sanctions would be adequate for a fair trial. Nor did the trial court abuse its discretion by determining that

---

[8] Judge Spector awarded the plaintiffs costs and fees for bringing their motions to compel and motions for contempt and for responding to Avco's motion to amend or vacate the contempt orders. Master Kallas ordered Avco to pay $18,683.58 in costs and fees associated with those motions and further provided that Avco bore the Discovery Master's expenses for considering the motion for costs and fees.

the focus of the contempt had moved beyond compliance with the contempt order and on to punishment and deterrence.

### D. Challenges to Specific Sanction Provisions

### 1. Striking Federal Defenses

Avco asserts that the trial court erred in precluding Avco from asserting its federal defenses.[9] Avco maintains that it did not manufacture or install the carburetor float and cannot be held liable for the float under federal law. Essentially, Avco asks us to determine that, as a matter of law, it was not liable under federal regulations. That question is not properly before this court. The trial court struck Avco's federal defenses as a sanction for its discovery violations. Therefore, we do not ask whether the trial court arrived at the proper legal conclusion, but whether the court acted within its discretion in imposing the sanction.

Crews asserted that Avco was liable for a defective and unsafe product and failed to warn the FAA or aircraft owners and operators, in violation of several federal regulations. Avco withheld information that it knew about the faulty float before the subject accident and was involved in communication and investigation as to the defect. This was relevant to its involvement with the float and its failure to warn and therefore relevant to its failure to comply with federal regulations. Avco's discovery violations thus prejudiced the plaintiffs' ability to litigate Avco's liability under the federal regulations. Striking Avco's

---

[9] Crews asserts that Avco failed to preserve its defenses by failing to respond to his third amended complaint. But, in Avco's answer to Crews's earlier complaint, it alleged defenses that were relevant to the claims in Crews's amended complaint. This was sufficient to preserve the defenses. See Duryea v. Wilson, 135 Wn. App. 233, 239, 144 P.3d 318 (2006) (finding defenses preserved where answer to original complaint was sufficient to indicate grounds on which defendant intended to defend).

federal defenses served to deter such conduct, prevent Avco from benefitting from withholding the information necessary to prove Crews's case, compensate Crews for the consequences of withholding that information, and punish Avco.

This sanction was tailored to Avco's violation and was not an abuse of discretion.[10]

2. Striking Comparative Fault Defense

Avco contends that the trial court abused its discretion in striking Avco's comparative fault defense. The court found that merely establishing certain facts, such as Avco's liability, would "still prejudice the plaintiffs in their ability to prove the elements of their case." The court stated that it would not instruct the jury to determine whether any other parties are at fault, because it would "prejudice plaintiffs' ability to prove that [Avco] is solely liable for their injuries and damages." The court further stated that it would not instruct the jury on the pilot's fault, because "it would be prejudicial to plaintiff Crews to ask the jury to compare the negligence or liability of the acts of [Avco] to those of plaintiff Crews given the discovery violation." Instead, the court instructed the jury that Avco's violation of federal regulations was a proximate cause of the crash and that Avco was liable to each plaintiff.

Avco asserts that this was an abuse of discretion, because the comparative fault defense was unrelated to the withheld discovery. Avco maintains that striking this

---

[10] Furthermore, it is unclear that Avco's federal statute of repose defense is relevant. Under the General Aviation Revitalization Act of 1994 (GARA), Pub. L. No. 103-298, 108 Stat. 1552 (codified at 49 U.S.C. § 40101 note), manufacturers of general aviation aircraft and parts are not liable for damages arising out of an accident occurring 18 years or more after the date of delivery of the aircraft to its first purchaser or lessee. GARA § 2(a)(1). Avco notes that it built and sold the plane's engine in 1978, meaning the engine is covered by the 18 year period of repose. But, the original engine is not in question here—it is the replacement carburetor that allegedly failed. The carburetor was built in 1999. The statute has not triggered as to the carburetor.

defense goes a step further than Magaña, where the sole issue was the defendant's liability. Here, Avco notes, the parties also disputed whether the negligence of other defendants or the pilot was a proximate cause of the crash.

Avco is correct that this case is more procedurally complicated than Magaña. Crews sued 11 defendants in total. By the time of trial, Crews had dismissed and/or settled with many of the defendants. Avco counterclaimed against Crews, alleging pilot error. Becker named Houston's estate as a defendant, also alleging potential pilot error. Contrary to Avco's position, however, we find that this complicated posture lends support for the propriety of striking the comparative fault defense.

Avco's discovery violations prejudiced Crews's ability to establish Avco's true role in the plane crash. This affected the allocation of liability to Avco and among the defendants. This violation could have allowed the jury to undervalue Avco's portion of fault. And, establishing pilot negligence could have defeated joint and several liability, thereby shifting liability away from Avco. See RCW 4.22.070(1)(b); Kottler v. State, 136 Wn.2d 437, 446-47, 963 P.2d 834 (1998). Striking the comparative fault defense prevented Avco from benefitting from its discovery violations in this way.

Avco challenges the trial court's conclusion that it would have been insufficient to merely establish Avco's liability, so this sanction was necessary. Crews counters that it would cause severe prejudice if the jury were to "apportion fault between Houston and Avco based on a trial solely about Houston's alleged negligence and a one-page instruction that Avco was liable." It is reasonable, not an abuse of discretion, to accept that Crews would suffer prejudice if the jury heard evidence of pilot error throughout trial, but evidence of Avco's fault only from a paragraph long jury instruction. Again, this could

lead the jury to misallocate fault between Crews and Avco, allowing Avco to benefit from its discovery violations.

Avco further maintains that this was not the least severe sanction necessary to cure any prejudice Crews suffered. But, Fisons instructs us that the trial court should impose the least severe sanction that is adequate to "serve the purpose of the particular sanction." 122 Wn.2d at 355-56 (emphasis added). Discovery sanctions serve not only to compensate, but to educate, punish, and deter. Id. at 356. And, the trial court's choice of sanction is a matter of discretion—there is no bright line rule dictating which rationale applies to which violation. Judge Benton stated that she was "truly troubled" by Avco's conduct, and her rationales for imposing sanctions included "punishing [Avco] for violations of long standing court orders." On the eve of trial, it was too late for compliance. Financial sanctions would not adequately compensate Crews. Punishment and deterrence were particularly valid purposes to be served by sanctions.

It was not an abuse of discretion to strike Avco's comparative fault defense.

### 3. Imposing Punitive Damages

Avco asserts that the trial court erred in imposing punitive damages. Avco first argues that it could not be held liable under either Washington or Pennsylvania law. This question, like Avco's liability under federal law, is not properly before this court. See supra, at 20-21. This is because the trial court determined Avco's liability by deeming the pleadings admitted as a sanction for Avco's discovery violations.

Avco further contends that the trial court failed to perform a choice of law analysis and determine that Pennsylvania law applies. When the transactions at issue did not all occur in Washington, the court must determine which state's law applies to the claims.

23

<u>FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.</u>, 175 Wn. App. 840, 856, 309 P.3d 555 (2013), <u>aff'd</u>, 180 Wn.2d 954, 331 P.3d 29 (2014). Here, the trial court applied Pennsylvania law with respect to punitive damages and did not conduct a formal choice of law analysis on the record. But, that is not fatal here.

Crews asserted that Avco committed outrageous and reckless conduct when it knowingly concealed and withheld its knowledge that the floats were faulty, creating an unreasonable risk of death or severe injury. Crews further asserted that Pennsylvania had the most significant contacts with the underlying accident: "[Avco's] principal place of business i[s] Pennsylvania. . . . [Avco] designs, manufactures, sells, and places into the stream of commerce reciprocating aircraft engines, including carburetors, and provides continuing information and services to aircraft owners and operators in support of [Avco] engines, from its Williamsport, Pennsylvania facilities." Because these allegations were deemed admitted as a sanction, it was uncontested that Pennsylvania law applied as to punitive damages.

This sanction was tailored to Avco's violation. In Pennsylvania, punitive damages are available "when a person's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton or reckless conduct." <u>SHV Coal, Inc. v. C'nt'l Grain Co.</u>, 526 Pa. 489, 493, 587 A.2d 702 (1991). Therefore, Crews argued, evidence of Avco's knowledge about the faulty floats was highly relevant to punitive damages. The trial court found that Avco's noncompliance substantially prejudiced the plaintiffs' presentation of evidence on punitive damages at trial. In deeming the pleadings admitted, the sanction made punitive damages available to be proved. This deprived Avco of the

24

benefit of withholding information about its conduct and compensated Crews for the lack of that information.

The trial court did not err in failing to conduct a choice of law analysis. It was not an abuse of discretion to allow punitive damages under these pleadings as deemed admitted.

### 4. Denying Offset

Finally, Avco argues that the trial court erred in denying it an offset of settlement amounts Crews received from other defendants. Avco asserted offset as an affirmative defense. The discovery sanctions order struck all defenses. However, after the court imposed sanctions and after trial, the parties stipulated to a reduction in judgment based on Crews's settlements with two other defendants. The trial court then entered final judgment without providing for the reduction. The court denied Avco's subsequent motion to amend the judgment to reflect the parties' stipulation.[11]

In sanctioning Avco, the court prohibited it from arguing that other parties were at fault, reasoning that it would prejudice the plaintiffs' ability to prove that Avco was solely liable. The discovery sanctions order did not provide a separate reason for striking Avco's offset defense. Having ensured that judgment would be entered against Avco for the full amount of damages proven, the trial court eliminated benefit to Avco from any willful withholding of discovery. Crews was entitled to a single recovery. See RCW 4.22.060(2). Avco was statutorily entitled to have its liability reduced by the amount Crews had already received. See RCW 4.22.060(2). Denying Avco's statutory right to offset for settlements

---

[11] As of oral argument, the parties had not filed a partial satisfaction of judgment to fulfill their stipulation.

with other defendants was not necessary to punish the discovery violation or to protect the plaintiffs' recovery. The parties recognized this in their posttrial stipulation. We are persuaded that it was an abuse of discretion to disregard the statute and the parties' stipulation.

Because it was an abuse of discretion to deny offset of settlement amounts, we remand for amendment of the final judgment to reflect any offsets authorized pursuant to chapter 4.22 RCW. We otherwise affirm.

WE CONCUR:

Cox, J.